## Haldeman *against* Michael.

The confession of a judgment to a creditor with a view to prefer him, is not invalid by reason of the provisions of the Bankrupt Law, if it be not voluntary but the effect of measures taken by the creditor or in his power to take; and it is incumbent on the party who seeks to defeat the transaction, to show clearly that it is voluntary.

ERROR to the District Court of *Lancaster* county.

On the 31st July 1841, William P. Michael executed a bond with warrant to confess judgment to John Friday, conditioned for the payment of $969 on the 1st April 1842, which was entered on record on the 3d August 1841. On the 2d July 1842 Michael executed a bond with warrant to confess judgment to Peter Halde- man, conditioned for the payment of $735.36 *on demand,* which was entered on record the same day, and a *fieri facias* was issued and levied on the defendant's personal property, which was sold for $773, and the money brought into court. On the 14th July 1842 a *fieri facias* issued upon the judgment of John Friday, which was levied on the real estate of the defendant; and upon a *vend. exponas* issued on the 12th October 1842, the same was sold for $1814, and the money brought into court. On the 12th July 1842 Michael confessed ten other judgments to his creditors.

On the 22d September 1842 a petition of the creditors of Mi- chael was presented to the District Court of the United States, setting forth " that the said William P. Michael, retailer of mer- chandise, is justly and truly owing debts exceeding $2000, and also owing unto the said petitioners the sum of $500 and upwards, and that he did lately, to wit, on the 1st day of June last past, become bankrupt within the Act of Congress in this case made and provided, to wit, by committing one or more of the acts herein- after mentioned, of which due proof is ready to be given by the petitioner at such time and place as the court shall direct. To wit, that said Michael being seised of certain real estate and pos- sessed of certain personal property in the county of Lancaster and district aforesaid, on the 1st day of June last past and at divers days thereafter, in contemplation of bankruptcy and for the pur- pose of giving the persons hereinafter named, creditors, endorsers and sureties of the said Michael, a preference or priority over the general creditors of the said Michael, made and executed to John Killinger and others, Peter Haldeman, William Michael, Jonas Garber, Jacob Neff, Michael Esbach, John Newcomer, John Friday, Benjamin Hershey, John M. Culp, A. S. Rohrer, Joseph Neff, John Fry, separate bonds with warrants of attorney to con-

[Haldeman v. Michael.]

fess judgments thereon against the said Michael, bearing date the 1st day of June last past, and on divers days thereafter. Upon such said bonds judgments were entered against the said Michael in the Courts of record for Lancaster county and State of Pennsylvania on the said 1st day of June last past and on divers days thereafter, and executions issued thereon of the 2d day of July last past and on divers days thereafter; and further, that the said Michael on the 1st day of June and 2d day of July last past, did willingly and fraudulently procure his goods and chattels, lands and tenements to be attached and taken in execution. Wherefore, the petitioners pray that due proceedings being had in the premises, the said Michael may be declared a bankrupt within the purview of the Act of Congress in such case made and provided, and other proceedings had thereon as are conformable to the said Act and to justice and equity may appertain."

On the 28th October 1842 Michael was duly declared a bankrupt and Israel Carpenter was appointed his assignee, who came into court and obtained a rule in the case of Haldeman against Michael " to show cause why the judgment should not be vacated and the execution set aside, and the sheriff ordered to pay the proceeds of sale of the personal property to the assignee in bankruptcy of the defendant :" and in the case of Friday against Michael " to show cause why the *fieri facias* levy, inquisition, condemnation and sale should not be set aside."

HAYES (President). The Bankrupt Act declares that all future securities, &c., given by any bankrupt in contemplation of bankruptcy and for the purpose of giving any creditor, &c. any preference or priority over the general creditor of such bankrupt, shall be deemed utterly void and a fraud upon such Act. This enactment cannot affect the judgment of John Friday, of June term 1841, No. 245, for $969, which was entered on the 3d day of August 1841; because that was before the passage of the Act. Nor is that judgment, indeed, included in the enumeration of those of which the petitioners complained. "All the provisions of the Act as to voluntary or involuntary bankruptcy"—this is the language of Judge STORY—" are prospective; that is, the parties and the facts must exist and fall within the predicaments pointed out after the passage of the Act." 5 *Law Reporter, No.* 7, *p.* 295. It was on this judgment that the defendant's real property was taken in execution and sold by virtue of the writs mentioned in the last of the above rules. These proceedings were clearly not in contravention of the Bankrupt Law, but were the regular judicial consequences of the lien obtained by Friday before the law existed. The rule to show cause why the *fieri facias*, levy, inquisition, condemnation, the *venditioni exponas* and sale thereon made in the case of Friday *v.* Michael shall not be set aside, must therefore be discharged.

The judgment of Haldeman against the defendant was entered

vi. — 17

[Haldeman v. Michael.]

and the bond with the warrant to confess judgment was given after the passage of the Bankrupt Law; namely, on the 2d day of July 1842. On the same day the *fieri facias* was issued on which the personal property of the defendant was levied and sold. This was two months and twenty days before the petition of Boyd and Cummins to have Michael declared bankrupt was filed. That the judgment-bond was executed for the purpose of giving Haldeman a preference over the general creditors of Michael, there can be no doubt; but that it was given in contemplation of bankruptcy, it lies upon the general creditors to prove. According to the American cases, which arose under the Bankrupt Act of 1800, as well as the English authorities on the subject of bankruptcy, payment or security to a creditor and with a view to prefer him is valid, if it be not voluntary but the effect of measures taken by the creditor or in his power to take. The slightest solicitation on the part of the creditor will protect the transaction. Unless it clearly appear that the act originated with the debtor and that he took the first step to make the transfer, it will not be deemed a fraudulent preference; and it is incumbent on the party who seeks to defeat the transaction, to show that it is voluntary. In 5 *Johns.* 412, in the Court of Errors of the State of New York, it was said by SPENCER, J., in delivering the opinion of the court, "that an insolvency is no objection to giving a preference, unless it be shown that a bankruptcy was contemplated at the time, was decided in the Supreme Court in the case in 3 *Johns.* 83. That principle will be found admitted and acted upon in a great variety of cases. It is founded in the right which every man has to dispose of his property to whom he pleases for an adequate consideration and in satisfaction of his debts, until he commits an act of bankruptcy or contemplates so to do; and where a part only of the insolvent's estate is transferred for the payment of a just debt, though the act be voluntary on the part of the insolvent, the transaction is not on that ground impeachable." 5 *Johns.* 426, 427.

The evidence in this case clearly shows that the judgment-bond given to Haldeman was not voluntary in the sense of these authorities; that Michael did not take the first step in regard to it; but that it was anxiously sought by the plaintiff, who insisted upon it, in order that he might be placed on an equal footing with two other creditors, to whom the defendant had given similar securities. It also appears that the defendant, instead of voluntarily or spontaneously giving such bond payable on demand, was desirous of having it made payable in six months after date, in which he was overruled by the plaintiff, by whose agent he was told, when he suggested the delay in payment, that this bond was in the form which Haldeman commonly used. Again; this security by no means covered the whole amount of the defendant's property; estimating it according to the proceeds of the subsequent sales by the sheriff and taking also into the account the prior liens, there

[Haldeman v. Michael.]

would be still a surplus; and it appears from the deposition of Roberts that Michael valued his real estate at \$3000 and said it cost him more, though it yielded but \$1754.44, when sold. The evidence further shows that the bond to Haldeman was not given in contemplation of bankruptcy, but that Michael had at that time made new purchases of goods on credit, in order to prosecute his business, and that on finding, to his manifest surprise, the sheriff had seized his personal property, he directed those goods which were *in transitu* to be returned to the vendor. As the making of that security was not an act of bankruptcy, so *à fortiori* was not the previous judgment-bond given on the 1st of June 1842, to Killinger, Shertzer and Bowman; and much less, the judgment obtained by Friday, already noticed.

I am, therefore, clearly of opinion that this case falls within the provisoes of the 2d section of the Bankrupt Law, which are as follows: " *Provided,* That all dealings and transactions by and with any bankrupt, *bonâ fide* made and entered into more than two months before the petition filed against him or by him, shall not be invalidated or affected by this Act: Provided, That the other party to any such dealings or transactions had no notice of a prior Act of Bankruptcy or of the intention of the bankrupt to take the benefit of this Act; and provided, also, that nothing in this Act contained shall be construed to annul, destroy or impair any lawful rights of married women, or minors, or any liens, mortgages or other securities on properties real or personal, which may be valid by the law of the States respectively and which are not inconsistent with the provisions of the 2d and 5th sections of this Act." Accordingly, the rule on behalf of the assignee of the bankrupt to show cause why the judgment of Haldeman, of June term 1842, No. 174, shall not be vacated and the execution set aside and the sheriff ordered to pay the proceeds of sale of personal property to the assignee in bankruptcy of the defendant, is discharged. And the rule to show cause why the amount of the plaintiff's judgment should not be paid out of the proceeds of the defendant's property now in court, is made absolute.

Errors assigned:

1. The court erred in discharging the rule to vacate the judgment of Haldeman *v.* Michael, and also in discharging the rule to vacate the judgment of Friday *v.* Michael.

2. In directing and decreeing the money in court to Haldeman.

*Frazer* and *Parke,* for plaintiff in error.
*Stevens* and *Ellmaker,* contra.

PER CURIAM.—The decree of the court is affirmed for the reasons given by Mr Justice HAYES.

Decree affirmed.