## WILKINSON'S APPEAL.

A confession of judgment at the instance of the plaintiff to secure him from liabilities contracted for the defendant, all of which became due four months before the defendant filed his petition in bankruptcy, is valid under the bankrupt law as against subsequent judgment creditors.

FROM the District Court of the city and county of Philadelphia.
Dec. 18. This was an appeal from the decree of the District

Court, distributing the proceeds of a sale by the sheriff under a *fi. fa.* against Moss.

On the 28th May, 1842, an agreement for an amicable action and confession of judgment was given by Moss to the appellant, on which judgment was entered August 2d.

By the statement annexed, according to the rule of the court, it appeared, this was for the purpose of indemnifying appellant, in consequence of liabilities incurred for the sole use of Moss. These were notes of appellant dated in March, 1842, at forty, sixty, and ninety days, amounting to upwards of $1200; an endorsement on Moss's note at ninety days, dated April 27, for $625; a judgment-note, lent him, held by C. & H., for $100; and suretiship for stay in execution, $280; amounting in all to $2229 70. It was also agreed therein, that a release from any of these liabilities should be a satisfaction *pro tanto;* the judgment to remain in full force for the amount of such of the above as should be suspended or substituted, until payment. On the 3d September, execution issued, and the proceeds of the levy and sale was the fund in dispute, amounting to $608.

Barton & Co. claimed under an execution left with the sheriff on the 6th of September, the day it issued.

Harris, under an execution issued on a day subsequent to that of Barton's.

On reference to the auditor, it was proved on behalf of Wilkinson, that his counsel, at the request of appellant, drew the confession of judgment from papers handed him by appellant in his clerk's handwriting; that he handed it to appellant, and never saw the paper again, until he issued the execution. That appellant frequently applied to him to issue execution, but he advised lenity, thinking Moss might get out of his difficulties. His views were acceded to until the execution was issued, when peremptory instructions were given. This delay was advised, under Moss's promises of payment of a certain sum for money lent.

On the 3d October, 1842, Moss filed his petition in bankruptcy, and on the 23d January following, a decree was made.

The assignee claimed the fund before the auditors, who awarded it to Barton and Harris; and his report being confirmed, this appeal was taken.

It seemed from the exceptions, that the auditor decided, the appellant's claim was a fraud on the bankrupt law.

In this court, the contending parties were the execution creditors, the *assignee not appealing.*

*Guillou*, for appellant, premising that the decision rested on the supposition, that the bankrupt law avoided the transaction, and that if this was a security within the meaning of the law, it was within its saving proviso as *bonâ fide*, and more than two months before the petition—submitted three points: 1. That under the act, the transaction must be voluntary, which this was not, as it was done at the instance of the creditor; Boydell *v.* Gillett, 2 Cromp., Mees. & Ros. 579; if caused by pressure of the creditor, it will not be fraudulent within the act.    Phœnix *v.* Ingraham, 5 Johns. 428; McMechen *v.* Grundy, 3 Harr. & Johns. 185; Haldeman *v.* Michael, 6 Watts & Serg. 128, a confession of judgment, if caused by the act of the creditor, is not voluntary within the bankrupt law, and the *onus* is on the creditor to show this.    On page 130, it is said, "unless the debtor took the first step, any solicitation is sufficient;" and that was affirmed by this court.

2. That an issue should have been directed to test the fact of fraud or contemplation of bankruptcy; for in Miller *v.* Black, 1 Barr, 420, it was held, that the court could not, on a statement of facts agreed on, decide the inference of fraud or contemplation of bankruptcy, though a jury would probably have so found.    In Reigart *v.* Small, 2 Barr, 487, the form of the issue is to be found.

3. That conceding it was within the act, the assignee only could take advantage of the defect.    Cornwell's Appeal, 7 Watts & Serg. 305, which, as to this point, is unaffected by Weiner *v.* Farnum, 2 Barr, 146; Edwards *v.* Coleman, 2 Bibb, 204; Pellman *v.* Hart, 1 Barr, 263.    [GIBSON, C. J.—The assignee would only be entitled as against the fraudulent judgment, not against the others.]

*Wm. L. Hirst*, for Harris.—The judgment is an indemnity for past liabilities; therefore, the authorities cited are inapplicable, for as no suit could have been commenced on these liabilities, the appellant could not have helped himself to an execution; it must, therefore, have been a voluntary act, and void under the bankrupt law.

2. An issue was unnecessary, as it was agreed the auditor should decide on the facts.    The agreement was, "the auditor shall take cognisance of the validity of the judgment," and his opinion rested partly on the fact, that no stay of execution was stipulated for, the liabilities not being then due.    That a judgment confessed is within the bankrupt law, is shown by 1 Penna. Law Jour. 404; 5 Law Rep. 310—312, 296; S. C., 1 Law Jour. 270.    [ROGERS, J.—There is not a shadow of evidence that the judgment was confessed at the request of any one but the creditor; is that fraudulent?]    If at his

request merely, it was voluntary, for the demand could in no way be enforced.

*Reply.*—Nothing has been said contradicting the authorities cited on the first point, and this judgment was four months prior to the petition. [ROGERS, J.—The case in 1 Barr says, explicitly, the aid of the bankrupt law can only be invoked under its authority, by the assignee.]

*Jan.* 6. COULTER, J., (after stating the case.)—The counsel for the appellees contended on the argument of the cause, that the confession of judgment to Wilkinson was given in contemplation of bankruptcy, and with an intent to give him a preference over the other creditors of the debtor; and that it was, *per se*, a fraud upon the bankrupt law, and therefore void. It was not contended that there was actual or moral fraud in the transaction, but that it must be construed a legal fraud, in order to effectuate the intention of the bankrupt law. And if it were not so held, there would be a loophole, through which the statute could easily and readily be evaded. To sustain this view of the case, Van Keeck v. Thurber, 1 Penna. Law-Jour., was cited. It must be admitted, that at first view, the general terms used by Judge Conkling would seem to sustain the counsel for the appellees. The judge combats the position, that confessing judgment or giving other security by the debtor, must be voluntary or spontaneous on his part, and without solicitation from the creditor, in order to render it void; and in the course of his argument seems to maintain that it is not necessary that any circumstances leading to the proof of actual collusion should be present in the transaction. But yet, in the case which he decides, strong facts of that kind were present, and governed the conduct of the debtor. Thus, it appears, from the statement of the case, that the debtor being insolvent and pressed by his creditors, suddenly went from Owego to Utica, where his father resided, stayed at his father's house, who immediately brought suit against him, and the debtor confessed judgment, including a debt due to his brother-in-law. It is added in the statement of the case, that many circumstances were shown, tending strongly to prove, that the suit was instituted with the full knowledge and consent of the debtor, and was, in fact, a concerted proceeding between his father and brother-in-law on the one part, and himself on the other. This clearly brought the case within one of the categories of the statute, to wit, "or shall willingly procure himself to be arrested, or his goods and chattels to be taken in execution:" and he was, without doubt, by taking the first step, to

prefer his relatives over other creditors, within the range of the bankrupt law, and properly adjudged a bankrupt. We must, therefore, refer the general expressions of the judge to the particular circumstances of the case, and limit their extent to the facts, upon which he adjudicated. So in the case of Wakeman v. Hoyt, 5 Law Reporter, 309, cited by Judge Conkling: the facts of the case control the extent of the decision, and Judge Thompson, who delivers the opinion of the court, says: "The debt secured by the attachment or execution may be *bonâ fide* and honestly due; nevertheless, if the debtor, being a merchant, willingly or fraudulently *procures* himself to be attached, or his property taken in execution, it is an act of bankruptcy." Judge Conkling did not sufficiently mark the line of distinction in this case, between the debt due and the means taken to enforce its collection. The true extent of the decision is, that there need not be actual fraud in the transaction. But it leaves the irresistible conclusion on the mind, that there must be a collusive design on the part of the debtor to give an unlawful preference to one or more creditors over the rest, to constitute it an act of bankruptcy. And such was the impress of the case; when the debtor, being hopelessly insolvent and pressed for security by his other creditors, executed to certain family connections a mortgage and assignment of all his property, including his stock in trade, tools, &c., manifesting by that operation a determination to stop business, and prefer his relations over his other creditors.

The case of Arnold et al. v. Maynard, 5 Law Rep. 296, was also cited for the appellees. Judge Story, who delivered the judgment of this court, observes, in relation to the point which has a bearing on this cause: "For the purpose of answering this question, I must assume that the retailer was conscious of his own insolvency, and his utter inability to carry on his business any longer, and designed to give the mortgagee a preference over all his other creditors. In this view of the matter, and the facts stated, I should answer the question in the affirmative, and say, the mortgage so given was an act of bankruptcy. Now, the facts stated, without repeating them here, did show a collusive design on the part of the debtor, to prefer one creditor over all the rest, and to cover a great deal more than was necessary to pay the preferred debt, from the reach and pursuit of the others, by that operation."

These last two decisions, by men so ripe in all legal learning, as to give their opinions a character of almost oracular verity in the profession, do not sustain the position that the confession of a judgment by a person even deeply indebted and insolvent, constitutes of

itself a fraud on the bankrupt act, and is an act of bankruptcy. Indeed, they both look to the presence of circumstances of some kind or other, which conduce to prove a sense of obliquity in the mind of the debtor, and a collusive design of willingly preferring one creditor over the other in a condition of known and hopeless insolvency. It may be, that the act need not be spontaneous on the part of the debtor, if other circumstances sufficiently mark the design of the act, and give it character. But, certainly, the debtor taking the initiative step, is, in all cases, evincive of the design of the act, and the almost universality of its existence in cases of unlawful preferences has tainted, and will continue to mark the character of such transactions. In a part of the opinion delivered by Mr. Justice Story, in the case last cited, he observes, "I agree, that the mere fact of a man's being insolvent, and knowing the fact, does not necessarily establish, that he means to stop business and break up his establishment; for he may still hope, and believe, that he can carry on business and redeem himself from insolvency." The learned and humane judge thus opens up to the eye and faith of the unfortunate debtor a land of hope and promise, to which he may look as encouragement to struggle on with adversity by honest and fair means, without fear of the blight of bankruptcy. While his conduct is *bonâ fide*, and marked with honesty, he may continue in the usual course of business, adopting the same means of extrication which the law allows to those who finally overcome their difficulties.

Let us look for a moment to the fountain head, the statute itself. The first proviso to the second section is in these words: "Provided, that all dealings and transactions by and with any bankrupt, *bonâ fide* made and entered into more than two months before the petition filed against him, or by him, shall not be invalidated or affected by this act." The confession of judgment to Wilkinson was over four months previous to the filing the petition in bankruptcy by Moss. And if it was *bonâ fide*, it is protected by the very terms of the act. And is *mala fides* to be imputed to any individual without evidence to support the imputation? Call it as you will a legal fraud, and without moral turpitude, still it is a fraud, and branded as such, which cannot exist in such cases without bad faith, as contradistinguished from cases *bonâ fide*. The statute admits and acknowledges the act of confessing judgment two months before the application in bankruptcy, and saves it from disturbance by the provisions of the act, if it be *bonâ fide;* and yet we are invoked to say that the existence of the fact is *per se* a fraud on the law, and not *bonâ fide*. Strange inconsistency! The statute would thus be made

a *felo de se*. It would strangle the very act which it sought to save. We apprehend that, to take the case out of the saving clause, it is incumbent upon those who attempt to defeat its operation to show, by satisfactory evidence, that the act or dealings were not *bonâ fide*. A confession of judgment is always *bonâ fide*, when the debt to secure which it was given was honestly due, unless done to accomplish some unlawful purpose. There is no allegation here that the debt to Wilkinson was not honest and fair. I admit that if it had been proved that Moss was hopelessly insolvent, and knew the fact; that he intended to break up and quit business; and that the judgment to Wilkinson was confessed under these circumstances, with a view to prefer him over the other creditors, that it would not have been *bonâ fide*, and that it would have been an act of bankruptcy, because it would have been a fraud upon the law, and an evasion of its provisions. But there is no colour of such evidence in this cause, nor any fact or circumstance proved leading to such conclusion. The account of Wilkinson was put into the hands of his attorney, for the purpose of taking measures to collect it. When he called on Moss, or saw him, the account and evidence of it was presented to him, who on request agreed to enter an amicable action and confess judgment. This was characteristic of an honest man. This judgment was not urged to execution immediately, nor for three months afterwards. The attorney, who was requested by Wilkinson several times to issue execution, advising forbearance and lenity, under a belief that part of the debt would be paid. It does not appear that Moss stopped his business; the amount or extent of his property at the time of confessing the judgment, or since, is not in evidence. It does not appear whether or not he has real estate, nor is there any thing in evidence from which it can be inferred, that at the time he confessed the judgment, he knew that he was insolvent, beyond the hope of saving himself; nor is the amount of his debts given. Four months often produces great reversions in business. In mercantile and trading communities, people tread on shifting sands; the wealth of to-day may pass away to-morrow. But nothing of the course of business, or his stock in trade, in relation to Moss has been given in evidence. In short, it has not been shown that at the time he confessed the judgment to Wilkinson, he was within the range of any of the five categories, the existence of some one of which must be shown to authorize creditors to proceed *in invitum* against the debtor as a bankrupt. There is no evidence furnished, which the court could lay their hands upon, as justifying us in pronouncing the confession of judgment by Moss to Wilkinson as an act

of bankruptcy, and not *bonâ fide*. This view of the case appears to be in conformity with the decisions of this court on the subject. Thus in Haldeman *v.* Michael, 6 Watts & Serg. 128, it was ruled that a bond with warrant of attorney to confess judgment, which was given two months and twenty days before the petition to have the debtor declared a bankrupt was presented by his creditor, and on which a *fi. fa.* was issued on the same day the bond and warrant were given, was good and valid, and did not constitute an act of bankruptcy. Judge Hays observes that the slightest solicitation on the part of the creditor will protect the transaction. "Unless it clearly appears that the act originated with the debtor, and that he took the first step to make the transfer, it will not be deemed a fraudulent preference. And it is incumbent on the party who seeks to defeat the transaction to show that it was voluntary." This court confirmed the judgment for the reasons given by the court below. In the case of Miller *v.* Bayle, 1 Barr, 420, although not precisely analogous in its features to this cause, yet the doctrines asserted by the late Mr. Justice Kennedy, in delivering the judgment of the court, strongly corroborate the views here expressed. Upon the whole, we are of opinion that the judgment of Wilkinson *v.* Moss has not been successfully impeached, and that being a valid judgment, and the execution issued upon it being the first levied, is entitled to the money in court. The order or decree of the District Court is therefore reversed, and it is ordered that A. M. Wilkeson have leave to take the money out of court, after payment of costs, to be applied to the satisfaction of his judgment, and an execution *pro tanto*.