CASE 45—PETITION ORDINARY—FEBRUARY 25.

## Green vs. Hackley, &c.

### APPEAL FROM GARRARD CIRCUIT COURT.

To entitle an officer to the protection which the indemnifying bond of the plaintiff in the execution affords him, against the consequences of any violation of the rights of others which he may commit in levying upon, or in the sale of, personal property under such execution, he must show a strict compliance on his part with the several conditions on which alone such protection is allowed. Those conditions are, that he shall have *taken* and *returned* the indemnifying bond, and that the surety therein was good when it was taken. Each is indispensable to the sufficiency of his defense. ( *Civil Code, secs.* 709, 711.)

An execution was levied on the 13th of April upon personal property. The claimant, on the 22d of the same month, commenced an action against the officer and others to recover the value of the property, and damages for an alleged assault upon the claimant, and the forcible seizure of the property, and on the next day (the 23d,) a bond of indemnity was executed to the officer by the plaintiff in the execution, and the sale of the property thereupon made by the officer. It did not appear that the bond had been returned. *Held*—that the bond does not present a bar to the action against the officer for the property taken.

Squire Turner, for appellant, cited *Civil Code, secs.* 709, 711, 44, 42, 43, 710; 15 *B. Mon.*, 449.

A. A. Burton, for appellees, cited 15 *B. Mon.*, 449.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Lydia Green filed this petition on the 22d April, 1858, in which, and in an amendment subsequently filed, she charges that she was the owner and entitled to the possession of a

horse and bridle, and that the defendants, Hackley, Bruner, Comely, and Murphy, made a violent assault upon her person, doing her considerable injury, and at the same time forcibly and wrongfully took out of her possession and carried off the horse and bridle mentioned, and converted the same to their own use, for which several injuries she claims damages.

Hackley answered, alleging, that as deputy of the sheriff of Garrard county, he had in his hands an execution in favor of his co-defendant Bruner, against A. Green, for $155, and that on the 13th of April, 1858, he levied this execution on the horse and bridle claimed by the plaintiff, as the property of A. Green, and sold the same on the 23d April, 1858, but that on the same day, and before making the sale, he required Bruner to execute a bond of indemnity, which was given, with H. Evans as surety, who was then and still remained good for the amount of the bond; that the execution and bond had been returned to the clerk's office, and he therefore asks that as to him the action be dismissed.

The other defendants answered jointly, setting up substantially the same matter of defense; and state that when the levy was made by Hackley, they, at his command, assisted in carrying away the property levied on, using no more force than was necessary, and doing the plaintiff no injury.

Upon the trial the plaintiff introduced several witnesses, who proved that she was the owner of the horse and bridle levied on by the officer, and that the same were then in her possession, and who also proved the personal violence and injury complained of.

The defendants gave in evidence the record of the suit and judgment in favor of Burner against A. Green, the execution which issued thereon, and which was levied on the horse and bridle claimed by the plaintiff, and also the bond of indemnity executed by Bruner and Evans. To the reading of this bond the plaintiff objected, but the objection was overruled, and she excepted.

Various instructions were asked by the plaintiff, and refused by the court, and at the instance of the defendants the following instruction was given:

"The sheriff having taken and returned to the proper office a bond as required by law, if the jury shall believe, from the evidence, that the surety was good and solvent at the time of taking the bond, the plaintiff cannot recover, *in this action*, damages for *the property* taken, but must look to the bond for indemnity for the property." Other instructions were given by the court, which it is not necessary to notice.

There was a verdict and judgment in favor of plaintiff against Bruner for one cent in damages, and in favor of the other defendants for their costs. From that judgment the plaintiff has appealed.

The principal question in the case, and the only one we shall consider is, whether the court, in the instruction given, correctly stated the legal effect and operation of the bond of indemnity executed by Bruner and his surety.

As has already been shown, the levy of the execution upon the property claimed by the appellant was made the 13th April, 1858; this action to recover the value of the property, and damages for the alleged assault, was commenced on *the 22d* of the same month, and on the *next day* the bond of indemnity was executed, and the sale of the property thereupon made by the officer. When the bond was *returned* does not appear, nor does it appear, indeed, except from the answers of the defendants, that it was ever returned at all.

It is insisted, on the part of the appellees, that under the provisions of the Civil Code, regulating the proceedings upon executions and distress warrants, the indemnifying bond, although executed after the action had been commenced, did, nevertheless, constitute a bar to the further prosecution of the action, so far, at least, as the claim for the value of the property seized was involved.

The section of the Code mainly relied on as sustaining this proposition is as follows :

"The claimant or purchaser of any property, for the seizure or sale of which an indemnifying bond has been taken *and returned* by the officer, shall be barred of any action against the officer levying on the property, if the surety in the bond was good when it was taken. And such claimant or purchaser may

maintain an action upon the bond, and recover such damages as he may be entitled to." (*Sec.* 711.)

By a previous section, (709,) if an officer who levies, or is required to levy, an execution upon personal property, doubts whether it is subject to the execution, he may give to the plaintiff therein, or his agent or attorney, notice that an indemnifying bond is required, and bond may thereupon be given by or for the plaintiff, with sufficient sureties, to the effect that the obligors will indemnify him against the damages he may sustain in consequence of the seizure or sale of the property, and will pay to any claimant thereof the damages which he may sustain in consequence of the seizure or sale, &c.

The object of these provisions was two-fold: *First.* To protect the officer against the consequences of any violation of the rights of others, which he might commit in the levy of, or sale under, an execution; and *secondly.* To prevent multiplicity and circuity of action, by requiring the injured party to seek redress, not against the officer, but against the party immediately liable to the officer on the bond, and upon whom the ultimate responsibility for the injury is thus made to rest.

But to entitle the officer to this protection he must show a strict compliance, on his part, with the several conditions on which, alone, it is allowed. Those conditions are, that he shall have *taken* and *returned* the indemnifying bond, and that the surety therein was good when it was taken. Each is indispensable to the sufficiency of the defense authorized by *section* 711.

The reason for requiring a return of the bond to the proper office is manifest. The party whose property has been wrongfully seized under an execution against another, has an *immediate* right of action to recover damages commensurate with the injury. But against whom may he proceed? The law affords him the means of determining this question with the utmost certainty. He has only to ascertain, by inquiring at the proper office, whether the indemnifying bond has been taken and returned or not. If it has been, he is thereby, in the language of the statute, "barred of any action against the offi-

cer," and must resort to an action upon the bond. If not, he may proceed at once against the officer, and all others aiding in the commission of the trespass, without incurring the hazard of being thereafter "barred of his action" by the subsequent taking and return of the bond.

That this is the only fair, just, and reasonable construction of the statutes in question is strikingly illustrated by the case before us. The plaintiff was, as she avers, and as the proof tends to show, forcibly deprived of the possession of her property. After the lapse of more than a week she brought her action against the parties who committed the trespass, including the officer and the plaintiff in the execution. Her cause of action was then complete as to all the defendants. No indemnifying bond had been taken or returned, and there existed, therefore, no bar or obstruction to the assertion of her right to redress. But after her suit is brought, the bond is taken, is set up and relied upon in the answer of the officer, and of the plaintiff in the execution, and upon this defense the claimant is turned out of court, subjected to the costs of the suit, and remitted to her action on the bond.

This is certainly extending the principle of official protection beyond any of the objects intended to be accomplished by the enactment. The mischiefs resulting from the interpretation contended for are seen in the uncertainties and delays to which it would, in most cases, subject the claimant of the property, and the undue advantages it would confer on the officer and the plaintiff in the execution.

We have not deemed it necessary to consider or determine the effect of those sections of the Code which, in substance, provide for substituting the plaintiff in an execution as defendant, in place of the officer who levies it, in an action brought against the officer for the property taken in execution. (*Sections* 42 *to* 44, *inclusive.*) The defense authorized by those sections was not relied upon, none of their principal requirements were complied with, and they therefore have no application to the case as presented.

It results from the view we have taken, that the instruction given by the court was erroneous, and the judgment is there-

fore reversed, and the cause remanded for a new trial and further proceedings not inconsistent with the principles of this opinion.