McIlvaine, J.
1. It is claimed by plaintiff in error, ■that the agreement set out in tbe original petition, as the ground of action, is nudum pactum.
Upon a fair construction, we think the petition shows •that the plaintiff and defendant mutually agreed to form a partnership for the purpose of making the proposed road improvement, in case the contract for making the’ ■same should be awarded to either of them, and that the •contract so awarded should inure to the benefit of the co-partnership. In such agreement the undertaking of each •party is based on the undertaking of the other, which, in law, is a sufficient consideration to support the contract. The fact that the contract could be awarded to only one of the parties, they being separate bidders, did not at all •affect the mutuality of the agreement.
2. It is also claimed that the contract, as set out in the petition, was in contravention of public policy, and therefore void.
The public policy which, it is supposed, avoids this com tract, is that which favors fair and honest competition at public sales, and forbids all contracts and combinations between bidders which stifle such competition. We unhesitatingly admit the rule to be, that any agreement ■entered into for the purpose of preventing competition at such sales is not only void, but it also renders any sale procured thereby voidable, at the option of the seller. So also any contract, the effect of which, or even the necessary tendency of which, is to stifle competition. Such contracts are absolutely void as between the parties thereto, because they are fraudulent as against the seller. But, on the other hand, we think the public, as well as the seller, has no right to interfere between the parties to a contract, where neither its purpose, its effect, nor its necessary tendency is to prevent fair competition at the sale.
*570 How, then, stands the contract as set out in the petition,, when tested hy these principles ?
It is quite clear that no purpose to restrain competition is expressed on the face of the contract; but, on the contrary, it does appear that the intention of the parties was that each should bid and compete at the sale. The bid of' the plaintiff* below had already been made and filed; and; the defendant, as was contemplated by the parties, afterward made and filed his bid, which proved to be the lowest' and best bid offered, as it was the successful one. The bid of each was based upon his own judgment, and filed at his own discretion. It does not appear that either had knowledge of the other’s bid, and we are not authorized to presume to the contrary. Such being the nature of the agreement, and such the result of the bidding, it is impossible-to say that the contract had the effect of stifling competition at the letting.
But it is said that the necessary tendency of the contract, was to restrain rivalry as between these parties. This may be so, if rivalry means simply a desire to defeat a competitor. But is this a proper test of the legality of such contracts? The rule of public policy under consideration is-not based on the theory, that the successful bidder at a. public sale should pay more than the fair value of the thing sold, or should take a public contract for less than the work is -worth. Such a policy would be as pernicious-as the evil against which the true rule is intended to guard. Eair competition among bidders, to the end that sellers-■may be protected against fraudulent combinations, is all the law seeks to secure, and this is accomplished when each bidder is left free to act in accordance with his own wishes and in conformity to his own judgment.
In a case, therefore, like the present, when no actual fraud against the rights of the seller was intended by the parties, it can not be said that the necessary tendency of such a contract is to restrain either party from bidding to the full limit his judgment of values will permit. Indeed, my own opinion, as well as experience, is, that such con *571 tracts, especially when the parties are personally anxious-to succeed, have a strong tendency to stimulate their bids,, inasmuch as losses, if any accrue, are distributed.
Our attention has been called to a decision by the Court of Appeals of New York, Atcheson v. Mallon, 43 N. Y. 147, which follows an earlier case in the same state, wherein a different conclusion was reached. Much as we esteem the decisions of that court, we can not follow it to the full extent to which it has applied this rule of public policy. Nor do we think it is sustained by the weight of authority. In Phippen v. Stickney, 3 Met. 388, the court said: “ The extent to which the doctrine of invalidating such contracts-can safely be carried would rather seem to include within the rule all cases of fraudulent acts and combinations having for their object to stifle fair competition at the biddings,, with the design of becoming the purchasers at a price less than the fair value of the property. Beyond this, the application of the principle contended for may be found productive of mischief, and an unwarranted interference-with the course of business at auction sales.”
To the same effect are Smith v. Greenlee, 2 Dev. 729; McMinn v. Phipps, 3 Sneed, 196; Smull v. Jones, 6 Watts & Serg. 128, and James v. Fulcrod, 5 Texas, 512.
3. It is farther claimed that the Court of Common Pleas-erred, in assessing as damages to the plaintiff, one-half the profits realized by the defendant on the assignment to Dyer of the contract for the work of constructing the road improvement. In this we see no error. This contract, by the agreement of the parties, was to inure to their joint benefit as partners. The defendant, in violation of his agreement to do the woz’k with the plaintiff as partners, and to hold this contract for the benefit of the firm, assigned it to another for a valuable consideration, which he received. The defendant should not be permitted to take advantage of his owzz wz’ong, by denying that the profits i'ealized were received by him for the joint use of the parties.

Motion overruled.

Day, C. J., Welch, White, and Réx, JJ., concurring.