WILLIAM E. SMITH vs. CHARLES I. RICHARDS & others.

Bristol.    October 28, 1891. — November 27, 1891.

Present: ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Conveyance in Fee — Easement — Breach of Covenant — Eviction.*

*It seems* that a deed of so much land " as may be covered and flowed by the new
reservoir," in which the grantor reserves to himself and his assigns a right to
take soil therefrom, "or otherwise improve, not interfering on the said flowage,"
conveys the fee, and not merely an easement to flow the land.

Land was conveyed in fee to a manufacturing company with a full right of flow-
ing the same, the grantor reserving the right to improve it without interfering
with the flowing; and for many years the grantee flowed it in the winter and
the grantor cultivated it at other seasons. The grantor's heirs then conveyed
to a married woman, by a warranty deed with full covenants, certain premises
which included a small part of the land already conveyed to the company, and
after two years of cultivation and flowing as before she conveyed the same
premises to a third person, and he to her husband, whose subsequent cultivation
thereof was prevented by a longer flowing of the land than usual. *Held*, that
the wife was evicted during her ownership, and her right to sue for the breach
of covenant did not fall to the husband; and that the latter could not maintain
an action against her grantors for breach of the covenants in their deed.

CONTRACT, for breach of the covenants in a warranty deed of
real estate. Writ dated January 15, 1890. Trial in the Supe-
rior Court, before *Sherman*, J., who reported the case for the
determination of this court, in substance as follows.

The plaintiff offered in evidence certain deeds, by which the
following facts were proved. On January 6, 1838, Edward Rich-
ards of Attleborough, in consideration of three hundred dollars,
conveyed by a warranty deed in the usual form to the " Falls
Cotton Manufacturing Company, their successors and assigns, a
certain tract of land, situate in said Attleborough, being a part
of my homestead farm, namely, so much of the same as may be
covered and flowed by the new reservoir, . . . reserving to my-
self and my heirs and assigns a right to take mud and soil from
said land above described, or otherwise improve, not interfering
on the said flowage, the said Richards maintaining such fence
on the same as may be necessary in law."

The defendants, who were the heirs at law of Edward Rich-
ards, on September 13, 1884, conveyed to Ella F. Smith, the

plaintiff's wife, certain premises, the description of which included a part of the land conveyed by their ancestor to the manufacturing company, covenanting in the usual form that "we are lawfully seised in fee simple of the granted premises, that they are free from all incumbrances, that we have good right to sell and convey the same as aforesaid, and that we will, and our heirs, executors, and administrators shall, warrant and defend the same to the said grantee and her heirs and assigns forever against the lawful claims and demands of all persons." On April 21, 1886, Mrs. Smith conveyed the same premises to one Beckett, and he in turn on the same day conveyed them to the plaintiff, both deeds containing the same description and covenants as did the defendants' deed to her.

It was admitted for the purposes of the trial that the waters of the new reservoir, mentioned in the deed of Edward Richards to the Cotton Company, covered about one and four fifths acres thus conveyed by the defendants to the plaintiff's wife and subsequently to him, and that he was ousted from the same. The plaintiff offered evidence to prove that the year before the defendants conveyed to his wife he occupied as tenant of the defendants the land in question, and mowed and pastured it; that before that time the defendants for many years mowed the grass which grew thereon; that after the delivery of the deed to his wife the plaintiff occupied the whole estate described in the defendants' deed, and mowed and pastured the land in question; that after he received his deed from Beckett he continued to cultivate the same land in various ways; that during the winter season, for more than twenty years past, the Falls Pond was usually full of water, flowing said premises up to the boundary line hereinafter referred to; that except in the winter season, or in time of freshets, it was not wet, or in any part covered with water, so as to interfere with the use of said premises, prior to 1888; and that during the years 1888 and 1889 it was continuously covered with water up to a line conforming to the boundary described in the deed from Edward Richards to the Cotton Company, so as to deprive him of its use.

The defendants contended, as matter of law, "that an action for the breach of the covenants against incumbrances, and of warranty in a deed of land from the defendants to plaintiff's

grantor, occurring before the plaintiff became the owner of said land, cannot be maintained"; and the judge, at the request of the defendants, ruled that, if the plaintiff proved all these facts, he would not be entitled to recover, and ordered a verdict for the defendants.

If the ruling was correct, the verdict was to stand; otherwise, a new trial was to be granted.

*E. Avery*, for the plaintiff.

*H. J. Fuller*, for the defendants.

ALLEN, J. The defendants contend that the deed of Richards to the Falls Cotton Company in 1838 conveyed only an easement. The plaintiff contends that it conveyed the fee. We are inclined thus far to agree with the plaintiff, because the reservation in the deed was not broad enough to include all beneficial uses that might be made of the land. For example, if mines or a quarry of stone were there, the grantor did not reserve them. *Hamilton* v. *Dunlop*, 10 App. Cas. 813.

Assuming this to be so, the title stood thus: the Falls Cotton Company owned the fee, with a full right of flowing the land, and Richards reserved the right to take mud and soil from the land, or otherwise improve it, not interfering with the flowing. That is to say, whatever right Richards reserved was in subordination to the Cotton Company's right of flowing. It was thus practicable to have two distinct occupations of the land, at different seasons of the year, not inconsistent with each other. The Cotton Company might occupy it by flowing whenever it pleased. Whenever the land was not flowed, Richards might occupy it for cultivation. In point of fact, according to the plaintiff's offer of proof, the land was thus occupied by the Cotton Company in the winter, and by Richards at other seasons, for many years. There was nothing in the plaintiff's offer of proof going to show that Richards asserted any title, or had or claimed to have any occupation inconsistent with the title of the Cotton Company.

Under this state of things, the defendants, who were heirs of Richards, conveyed to Ella F. Smith, with full covenants of seisin, of freedom from incumbrances, of right to convey, and of warranty, certain premises which included a small parcel of the land already conveyed to the Falls Cotton Company. The first

three covenants were broken at once, and the grantee might have sued thereon, and her right to sue did not pass to her subsequent grantee. *Clark* v. *Swift*, 3 Met. 390. She held the title from September 13, 1884, to April 21, 1886.

The plaintiff's ground of argument, in support of his right to recover upon the covenant of warranty, if we understand it correctly, is that during this time she was in full possession of the whole estate described in her deed, including the small parcel owned by the Falls Cotton Company, and that she was not disturbed in her possession by the holder of the paramount title, so that at the time of her deed to Beckett, on April 21, 1886, she had not been evicted; and that the eviction of the plaintiff, who got title from Beckett, was the first eviction that took place. But we cannot so construe the offer of proof as shown in the report of the case. This offer stated that "during the winter season for more than twenty years past the Falls Pond was usually full of water, flowing said premises up to the boundary line." This embraced the two winters of Ella F. Smith's ownership. We must understand that during those two winters, as during other winters, the small parcel referred to was flowed by the Falls Cotton Company. Having a title to this small parcel, and having a right to flow it at pleasure, the Falls Cotton Company exercised this right during these two winters. We cannot attribute the flowing to any other purpose than the purpose and intention of exercising the plain rights of the company. There is no suggestion of any other purpose. If, therefore, Ella F. Smith entered upon the whole of the premises described in her deed, under a claim of right, she was dispossessed of this small parcel when it came to be flowed by the Falls Cotton Company in the exercise of its rights under its title. If she claimed anything more than occupation in subordination to the title of the company, she was evicted by the flowing under its paramount title. Such a flowing constituted an eviction, and was a breach of the covenant of warranty. *Whitney* v. *Dinsmore*, 6 Cush. 124, 128. *Estabrook* v. *Smith*, 6 Gray, 572, 577. *Kramer* v. *Carter*, 136 Mass. 504. *Pumpelly* v. *Green Bay Co.* 13 Wall. 166, 181. For this breach of covenant she might sue, and her right to sue did not pass to her grantee. *Ladd* v. *Noyes*, 137 Mass. 151. Rawle on Covenants, (5th ed.) § 204.

There is no question in this case, and none has been argued by counsel, as to the effect which might result if, after her eviction, Ella F. Smith had been restored to possession under any lawful title. No such thing happened. There was no offer to show that she ever afterwards gained any lawful title as against the Falls Cotton Company, or even that she ever held possession as against that company. She did as her predecessors had done, and as she and they had a right to do, namely, she improved the land when it was not flowed, but she did not interfere with the flowing. She regained no possession as against that. Leaving the land unflowed during the summer season was no surrender of the title by the Falls Cotton Company, and no restoration of possession to her. She had been evicted under a paramount title; she had her action for breach of the covenant of warranty; she might have recovered full damages; and after her conveyance to Beckett, and Beckett's to the plaintiff, the act of flowing in 1888 and 1889, though continued longer in time, was not the assertion of any new or different title from that which had been asserted during the ownership of Ella F. Smith, and was no new eviction; it was merely the continued assertion of the same title, and it constituted no new breach of covenant. See *Clark* v. *Swift*, 3 Met. 390, 394, and cases there cited.

According to the terms of the report, the entry must be,

*Verdict to stand.*