JOHN W. WEEKS & another, trustees, *vs.* JAMES J. GRACE.

Suffolk. March 27, 28, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Eminent Domain. Deed. Covenant. Words,* "Purchase."

The appropriation of private property for a public use under the right of eminent domain is a proceeding *in rem*, and the title acquired is an independent one not derived from that of the owner of the land. Therefore the existence of an easement which was taken by a city under the right of eminent domain in a strip of land for the purpose of laying and maintaining a sewer is not a breach of a covenant in a deed of the land warranting the title against the lawful claims and demands of all persons claiming by, through or under the grantor. KNOWLTON, C. J. & HAMMOND, J. dissenting.

CONTRACT for an alleged breach of warranty in a deed given by the defendant to the plaintiffs as trustees, dated October 30, 1897, conveying certain land on Ashford Street in that part of Boston called Brighton. Writ dated November 15, 1900.

At the trial in the Superior Court before *Bell*, J. it appeared that the deed contained the following covenants: " And I the said grantor for myself and my heirs, executors and administrators, do covenant with the said grantees and their heirs and assigns that the above described premises are free from all incumbrances made by me except as aforesaid, and that I will, and

my heirs, executors and administrators shall warrant and defend the same to the said grantees and their heirs and assigns against the lawful claims and demands of all persons claiming by, through or under me except as aforesaid but against none other."

It further appeared that on January 31, 1894, the city of Boston took by eminent domain an easement in a strip of the land conveyed by the deed for the purpose of laying and maintaining a sewer.

The defendant made certain requests for rulings which were refused by the judge. The first of these requests was for a ruling that the plaintiffs could not recover.

The judge refused to order a verdict for the defendant and submitted the case to the jury, who returned a verdict for the plaintiffs in the sum of $1,500, with interest from October 30, 1897, making in all $2,142. The defendant alleged exceptions.

The case was argued at the bar in March, 1906, before *Knowlton*, C. J., *Morton*, *Lathrop*, *Braley*, & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices. Mr. Justice Lathrop resigned before the case was decided.

*E. R. Anderson*, (*A. T. Smith* with him,) for the defendant.

*F. Burke*, (*T. J. Kenny* with him,) for the plaintiffs.

BRALEY, J. The restricted covenants against incumbrances and of warranty contained in the defendant's deed under which the plaintiffs derived their title are independent, and a breach of either would give a distinct cause of action. The building and maintaining of a public sewer through a part of the granted premises did not constitute a breach of the first covenant, as the action of the public authorities was neither caused nor permitted by the grantor. *Estabrook* v. *Smith*, 6 Gray, 572, 577. *West* v. *Spaulding*, 11 Met. 556. *Cole* v. *Lee*, 30 Maine, 392, 397. But the covenant of warranty was broken by the constructive eviction caused by its maintenance, if the easement taken by eminent domain is derived from and supported by the title of the defendant. *Comstock* v. *Smith*, 13 Pick. 116. *Raymond* v. *Raymond*, 10 Cush. 134, 140. *Smith* v. *Richards*, 155 Mass. 79, 82. It therefore becomes important to consider whether upon its exercise the public acquired in the land a derivative or an independent title.

In *Pollard* v. *Hagan*, 3 How. 212, 223, where the right of the Federal Government in the soil of the States carved out of the Louisiana Purchase is considered, Mr. Justice M'Kinley defines this function as follows : " The right which belongs to the society, or to the sovereign, of disposing, in case of necessity, and for the public safety, of all the wealth contained in the State, is called the eminent domain." By force of this power, back of all private titles lies the eminent domain as an inherent attribute of organized government: *Perry* v. *Wilson*, 7 Mass. 393. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115. And whenever the Legislature adjudges it expedient the property of the citizen may be appropriated for public use. The taking may be by legislative act, or the right may be delegated. *Talbot* v. *Hudson*, 16 Gray, 417, 424. *In re Mayor & Aldermen of Northampton*, 158 Mass. 299. *Abbott* v. *New York & New England Railroad*, 145 Mass. 450, 453, 454. *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281. Ordinarily where land is condemned for this purpose the quality of the estate is defined either by the paper taking, or its extent may be measured by the object to be accomplished. It may be a fee or an easement. *Harback* v. *Boston*, 10 Cush. 295. *Page* v. *O'Toole*, 144 Mass. 303. *Titus* v. *Boston*, 161 Mass. 209. *Newton* v. *Perry*, 163 Mass. 319, 321. *Newton* v. *Newton*, 188 Mass. 226, 228. But whatever the interest appropriated, the owner must be fully compensated. Declaration of Rights, art. 10. *Whitman* v. *Nantucket*, 169 Mass. 147, 149. *Hellen* v. *Medford*, 188 Mass. 42, 45. This provision of our Constitution, which either by direct enactment or by reference to similar provisions in existing laws is usually embodied in the statute by which the right is exercised or delegated, while an inseparable incident forms no part of the power itself. *Boom Co.* v. *Patterson*, 98 U. S. 403, 406. *United States* v. *Jones*, 109 U. S. 513, 518. Cooley, Const. Lim. (7th ed.) 813. Dillon, Mun. Corp. § 590. See 1 Thayer, Cas. Const. Law, 953, note. Nor does the right to compensation affect the validity of the condemnation where the landowner either assents, or allows his claim to be barred by limitation. *Haskell* v. *New Bedford*, 108 Mass. 208, 214.

If the State takes property by escheat or forfeiture it suc-

ceeds to the title of the former owner, and claims under him. 4 Kent Com. (14th ed.) 427, note b. *Casey* v. *Inloes,* 1 Gill, 430. *Colgan* v. *McKeon,* 4 Zabr. 566, 575. And this is so when an execution is levied by sale of real estate. The purchaser by operation of law gets the debtor's title, and nothing more, and it follows that if the wife purchases under the sheriff's deed she acquires no title, which then remains in the husband, as in contemplation of law the deed is a mere conveyance from her husband to herself. *Stetson* v. *O'Sullivan,* 8 Allen, 321. In the foreclosure of a mortgage or under an assignment in bankruptcy a purchaser at the sale or the assignee can get no greater estate than the mortgagor conveyed or the bankrupt owned. These familiar instances are illustrative of derivative titles where those who purchase take by grant or succeed by assignment, and acquire no greater interest than that held by those under whom they claim.

But if the principle is applicable to real property seized in the exercise of the right of eminent domain, then if only a bare title is taken, which later is found to be invalid because a mistake has been made in ascertaining the ownership, the condemnation must be repeated, or the public can be ousted by the true owner. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co., ubi supra.* The language used by this court when discussing the nature of the proceedings indicates more than a transfer of an existing title. Thus it was said in *Brown* v. *Lowell,* 8 Met. 172, 178, when speaking of the adjudication of the mayor and aldermen in laying out a way over private property, "the latter appropriates the land to the public, and divests the right of the owner to the exclusive use and possession of it, from the time it is passed." See also *Commonwealth* v. *Boston & Lowell Railroad,* 12 Cush. 254, 258; *Drury* v. *Boston,* 101 Mass. 439, 440; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 324. The probability of such an interference if a mistake has been made in the identity of the owner or owners is repugnant to the nature and scope of the right itself. To avoid such complications and to make the right immediately effective the appropriation of private property for a public use is strictly a proceeding *in rem,* and has been so defined by our decisions. *Edmands* v. *Boston,* 108 Mass. 535, 544. *Appleton* v. *Newton,* 178 Mass. 276,

281. *Lancy* v. *Boston*, 185 Mass. 219. *Sweet* v. *Boston*, 186 Mass. 79. The power when exercised acts upon the land itself, not upon the title, or the sum of the titles if there are diversified interests. Upon appropriation all inconsistent proprietary rights are divested, and not only privies but strangers are concluded. *Clark* v. *Worcester*, 125 Mass. 226, 231. *Brigham* v. *Fayerweather*, 140 Mass. 411, 413. See also *The Avon*, Brown, Adm. 170; *Certain Logs of Mahogany*, 2 Sumner, 589. Thereafter whoever may have been the owner, or whatever may have been the quality of his estate, he is entitled to full compensation according to his interest and the extent of the taking, but the paramount right is in the public, not as claiming under him by a statutory grant, but by an independent title. *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 23 Pick. 360, 393, 394. *Dingley* v. *Boston*, 100 Mass. 544, 559. *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 184. *Beekman* v. *Saratoga & Schenectady Railroad*, 3 Paige, 45, 73. *Todd* v. *Austin*, 34 Conn. 78. *Harding* v. *Goodlett*, 3 Yerger, 41, 53. *Weir* v. *St. Paul, Stillwater & Taylor's Falls Railroad*, 18 Minn. 155. *West River Bridge Co.* v. *Dix*, 6 How. 507. See also *League* v. *Texas*, 184 U. S. 156; *Long Island Water Supply Co.* v. *Brooklyn*, 166 U. S. 685.

This conclusion is further supported by the analogy of the sale of land for unpaid taxes where the purchaser, which may be the city or town, gets a new unincumbered title in fee by force of the lien of the taxing power, which cuts under all incumbrances or qualifying estates. R. L. c. 13, § 48. *Harrison* v. *Dolan*, 172 Mass. 395, 398. *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 184. *Hunt* v. *Boston*, 183 Mass. 303, 306. *Abbott* v. *Frost*, 185 Mass. 398, 400. *Hefner* v. *Northwestern Ins. Co.* 123 U. S. 747, 751. *Textor* v. *Shipley*, 86 Md. 424, 438. *McQuity* v. *Doudna*, 101 Iowa, 144, 146. Independently of the theory of compensation for a compulsory surrender of his land by the citizen as distinguished from the equal benefit which the taxpayer gets as the equivalent of his tax, this power of organized government to levy a proportional tax for the purpose of raising public revenue is no more essential than the power, if necessity requires its exercise, to appropriate private property for a public use. If in one case

there is a new grant under the seizure which conveys the land
as such without regard to old titles, there is no satisfactory
reason why a taking under eminent domain is not of a similar
nature. Indeed, the grant to the purchaser at the tax sale and
the taking under eminent domain are alike to supply govern-
mental needs. By one process it takes and conveys to pay the
tax; by the other it takes and retains for its own use. In each
instance the tenure is original and independent. *Goodyear Shoe
Machinery Co.* v. *Boston Terminal Co.*, *Emery* v. *Boston Ter-
minal Co.*, *Dingley* v. *Boston*, *West River Bridge Co.* v. *Dix*,
*ubi supra.* The case of *Burt* v. *Merchants' Ins. Co.* 106 Mass.
356, is not in conflict. The construction of the St. of 1870,
c. 327, by which the Commonwealth gave its consent that the
United States might condemn land as a site for a post office
in the city of Boston was the question presented for decision.
This act provided that if the owners of the estates to be acquired
could not agree upon the price, then an application might be
made to the Superior Court to have the valuation fixed by a
jury. The owners not having agreed a petition was brought,
and, no proof being offered of any agreement between the parties
for a purchase and sale, the question was whether the petition
could be maintained. It was held that the word "purchase"
was broad enough to include a taking by the delegated right of
eminent domain. But this is far from saying that by the exer-
cise of this right the public acquire nothing more than a deriva-
tive title. The language used that "the property is held under
a statute conveyance, and the title is in legal phrase by pur-
chase" is to be read in connection with the provision found in
the last part of the second section that after a jury has ascer-
tained the value, then upon tender of this sum with costs and
expenses, or if the respondent refuses to accept, upon deposit of
this amount for its use with the treasurer of the Commonwealth,
the fee should vest in the United States. It is manifest that
nothing more was meant than to say that by intendment of law
title by purchase includes all title to real property except when
acquired by descent, and this was the construction of similar
language in *Kohl* v. *United States*, 91 U. S. 367, where it was
held that while the words "to purchase" might be considered as
including the power to acquire by condemnation, yet generally

in statutes as well as by common use the word "purchase" is employed to denote acquisition by contract between the parties without governmental interference.

In the opinion of a majority of the court, the city of Boston not having acquired an easement "by, through or under" the defendant his covenant of warranty was not broken, and the ruling asked for in the defendant's first request should have been given.   *West* v. *Spaulding, ubi supra.*

*Exceptions sustained.*

The CHIEF JUSTICE and Mr. Justice HAMMOND dissent.

In their opinion, a taking of property under the right of eminent domain is not an assertion or a transfer by the State of an independent paramount title, held by it against one who previously had acquired, through a grant from the government, that which purported to be a perfect title; but is merely an exercise of inherent sovereign power to compel a holder of property to give it up and transfer it for a full consideration to the State, or to a representative of the State, that takes it by an involuntary proceeding because it is needed for a public use.

In their view the covenant is not to be construed narrowly, and the taker, in such a case, claims "by, through or under" the former holder of the title, who is paid for it by the taker.