GEORGE S. MERRIAM et al. *v.* RALPH H. SEELYE et al.

Hampden, March, 1907.

*Restrictions — Effect as to Third Parties of Agreement to Release — Effect of Sale for Taxes.*

The question presented by this case together with the two others which were tried with it, is as to the present existence and validity of the restrictions against the erection of any buildings on the west side of Chestnut st. in the City of Springfield originally imposed in certain deeds given by one Jonathan Dwight, who in 1822 purchased the entire property in controversy, laid out what is now known as Chestnut st. through the westerly portion of it near the edge of a steep bluff which there breaks off to the westward, and immediately began selling off house lots. The lots as originally sold by Mr. Dwight were large tracts extending on both sides of the street, and each deed contained a restriction against the erection of buildings on the portion to the west of Chestnut st. The original house lots have since been greatly subdivided and otherwise changed, and in the course of the many transfers of title both the burden and the benefit of the restrictions have, as to many of the present lots comprised within the limits of the original estate, come together in the same ownership. Title to some of the present estates is held under deeds which contain an express provision that the grantees, their successors and assigns, are to have no interest appurtenant to their estate, or otherwise, in any of the original restrictions, and that the grantees release said restrictions.

The question raised in regard to the effect of this provision as to the lots on the west side of the street belonging to owners other than the grantors in the deeds, is an interesting one. It has been vigorously contended that nobody can take advantage of the covenants in a deed, or of an estoppel created by a recital or express agreements contained in a deed, except the parties to the instrument, or those having their estate. It is also argued that a restriction is an equitable easement, and must be treated in accordance with the law of easements; that no easement can be created for the benefit of a third party, that correspondingly neither can a restriction be reserved for the benefit of a third party, and that analogously a release of restriction cannot operate for the benefit of land of a third party.

The right to the enforcement of an equitable restriction, or rather the benefit of a restriction which has been created upon various tracts of land as part of a general scheme of improvement and development, is not a legal right. The whole doctrine, as it has grown up in Massachusetts, is the creation of equity, and is based, not upon a grant express or implied, or upon any technical forms employed, but rather upon purely equitable considerations arising principally from the circumstances under which the respective parties obtained title to their lands. The enforcement of restrictions which form part of a general scheme of improvement rests, not upon a right created by grant or reservation in favor of others, or upon any absolute right legal or equitable, but rather upon an estoppel which equity will enforce as a matter of common justice against one who has taken his land subject to a restriction which he knew either from the record or the circumstances of the case was imposed for the benefit of others, and the existence of which was relied upon by them as a consideration in acquiring their lands. This seems to be the principle apparent in all of the decisions from Whitney v. the Union Railway, 11 Gray, 359, to Evans

*v.* Foss, 194 Mass. 513. (Feb. 1907.) See also an article by Prof. Ames, 17 Harvard Law Review, 174. As suggested by Mr. Justice Loring in Bailey *v.* Agawam Bank, 190 Mass. 20, equity does not enforce such provisions because they are restrictions, but rather they are called equitable restrictions because they are matters in the nature of easements, servitudes, or restrictions running with the land, which equity will enforce.

Applying the same reasoning and the same principles to the effect of a release, it seems to me that where one has accepted a deed, and in consideration thereof or by an express stipulation therein, has agreed that he will release and renounce the benefit of restrictions upon all lands affected thereby whether owned by his grantor or not, equity will not thereafter intervene on his behalf or for his benefit to uphold them, nor will it thereafter lie in his mouth to assert in a court of equity that he has a " right " to their enforcement.

The present Seelye estate together with certain other lots came into the possession of one Eunice L. Edwards, who died in 1875, and her heirs, in 1878, conveyed to George Merriam a strip from the southerly portion of this estate by a deed which contained no mention of restrictions in the granting clause, but which excepted the " conditions " from the covenant against encumbrances and the covenant of general warranty. So far as said remaining Edwards land is concerned, the benefit of the original restriction against building on the northerly part of the present Merriam land was extinguished by merger when both tracts came into the ownership of Edwards. When the Edwards heirs sold to Merriam the restriction was not reimposed in favor of their remaining land, but the lot passed subject to the restriction in favor of all other lots to which the benefit was originally appurtenant. The restriction was therefore properly excepted from the grantors' covenants. This amounted, however, merely to an exemption from liability on the covenants;

not in any way to the creation of a restriction in favor of the remaining land of the grantor.   Wendall *v.* Fisher, 187 Mass. 81.

The principal contention in the case of the Haile heirs, petitioners, is founded upon their claim of title through certain sales for taxes, whereby they assert that they have acquired a title free from all easements or restrictions. Whether a tax deed racks a title to the extent of clearing it from equitable rights to enforce restrictions, has never so far as I know been expressly adjudicated, although it has been so intimated in several dicta.   It was not supposed by conveyancers that it had this effect prior to the decision in Hunt *v.* Boston.   As a result of the possibilities suggested by that case the statute of 1905 (Acts of 1905, Chap. 193) was enacted.   I rule that these tax sales did rack the title, and that the prayer of the petitioners in the Haile case must be granted, viz: that the restrictions be determined to be invalid as to the tract of Edwards land near the foot of Edwards st., now standing in the name of the heirs of William.H. Haile.   Hunt *v.* Boston, 183 Mass. 303;  Weeks *v.* Grace, 194 Mass. 296.   With the burden, however, there was extinguished also any benefit of the restrictions in favor of said Haile lot.

Decree accordingly.

R. W. Ellis, F. H. Stebbins, H. G. Whitman, for petitioners.

Carroll & McClintock, S. S. Taft, for respondents.