SUMNER S. FANGER *vs.* CELIA LEEDER & another.

Norfolk. March 6, 7, 1951. — June 11, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, & COUNIHAN, JJ.

*Contract,* For sale of real estate, Performance and breach. *Deed,* Acceptance, Covenant, Encumbrance, Quitclaim deed. *Deceit. Landlord and Tenant,* Term of lease, Lease for more than seven years. *Real Property,* Encumbrance, Curtesy, Straw owner.

Acceptance of a deed by a purchaser of real estate under a contract with the seller which provided that "full possession of the said premises . . . is to be delivered to the . . . [purchaser] at the time of the delivery of the deed . . . but the acceptance of a deed and possession by the . . . [purchaser] shall be deemed to be a full performance and discharge hereof," resulted in a merger of the terms of the contract in the deed and precluded recovery by the purchaser from the seller for alleged breach of the contract in that at the time of the delivery of the deed, which mentioned no encumbrances, the premises were subject to an unrecorded lease not for more than seven years of which the purchaser had no notice.

A purchaser of real estate subject at the time of the delivery of the deed, which mentioned no encumbrances, to an unrecorded lease not for more than seven years of which he had no notice, was not entitled to maintain an action of tort for deceit against the seller based on a provision in the contract of sale that "full possession of the said premises, subject to present tenants at will . . . is to be delivered to the . . . [purchaser] at the time of the delivery of the deed," where there was no allegation that the seller at the time of the making of the contract did not intend to carry out such provision: if such provision was a representation of the status of the tenants in the premises at the time of the making of the contract it was immaterial, and if it referred to what their status would be at the time of the delivery of the deed it was not a representation of an existing fact but a mere promise.

An unrecorded lease for a term of one year from a specified date, pro-
viding that it should continue "in full force and effect thereafter from
year to year until one of the parties shall, on or before the first day of
July in any year, give to the other party sixty . . . days' written
notice of intention to terminate this lease on the last day of August in
any year, in which case the lease hereby created'shall terminate in ac-
cordance with such notice," was not a lease "for more than seven years
from the making thereof" within G. L. (Ter. Ed.) c. 183, § 4, as appear-
ing in St. 1941, c. 85, and was, as to a third person to whom the leased
premises were conveyed in October of a certain year, an encumbrance
thereon at that time to the extent that it was not terminable until the
following August 31.

An encumbrance on real estate was not "made" by the grantor in a quit-
claim deed thereof within the meaning of G. L. (Ter. Ed.) c. 183, §§ 11,
17, merely because he had failed to exercise an option to terminate a
lease to which the premises were subject when he gave the deed but
which he himself had not made, where it did not appear that he knew
of the existence of the lease at any time; there was no merit in a con-
tention that by failing to exercise the option he in effect created a new
lease.

A husband, whose only promise, in signing a contract in which his wife
agreed to sell real estate standing in her name, was to join in the deed
to release his curtesy, and who did join in the deed merely to do so,
would not be liable for breach of the contract, or for a misrepresenta-
tion therein, or for breach of the covenants of the deed, even if his wife
held the title to the premises as a straw for him and a partner of his.

CONTRACT OR TORT. Writ in the Superior Court dated
February 9, 1948.

The action was tried before *Goldberg*, J.

*S. Berkman*, (*H. H. Borax* with him,) for the plaintiff.

*J. C. Johnston*, (*L. C. Levine* with him,) for the defendants.

COUNIHAN, J. This is an action of contract or tort in
three counts. The first two counts are based upon a written
agreement under seal for the sale and purchase of certain
land and the building thereon in Brookline, one count
alleging a breach of the agreement and the other sounding
in deceit. In the third count recovery is sought for breach
of a covenant against encumbrances in a quitclaim deed
of the premises delivered to the plaintiff. The action was
tried to a jury. It is here on an exception of the plaintiff
to the allowance of a motion for a directed verdict for the
defendants on all counts.

On evidence most favorable to the plaintiff the jury

could reasonably have found as follows: On October 14, 1947, the plaintiff and the defendant Celia Leeder entered into the agreement referred to, whereby Celia Leeder agreed to sell and convey by a quitclaim deed and the plaintiff agreed to purchase the premises in question. This agreement was on one of the usual printed forms in which Celia Leeder was named the party of the first part and the plaintiff the party of the second part. In it Frank Leeder, the other defendant, who is the husband of Celia, agreed to join in the deed to be delivered to the plaintiff to release all rights of curtesy in said premises. The plaintiff and the defendants signed in the usual places provided upon such printed forms. The agreement provided so far as here pertinent, "Full possession of the said premises, subject to present tenants at will, . . . is to be delivered to the party of the second part at the time of the delivery of the deed . . . but the acceptance of a deed and possession by the party of the second part shall be deemed to be a full performance and discharge hereof." Thereafter on October 31, 1947, a quitclaim deed, in statutory form, of the premises was delivered to the plaintiff who recorded it. In this deed Celia Leeder was named as grantor and she duly acknowledged it to be her free act and deed. No mention of any encumbrance was made in the deed. Frank Leeder joined in signing the deed to release his rights of curtesy in the premises and all other rights therein. At the time of the conveyance there was an outstanding lease given by H. N. Gorin individually to one Kallen. This lease was dated August 4, 1941, for a term of one year from September 1, 1941. By its terms it continued "in full force and effect thereafter from year to year until one of the parties shall, on or before the first day of July in any year, give to the other party sixty (60) days' written notice of intention to terminate this lease on the last day of August in any year, in which case the lease hereby created shall terminate in accordance with such notice." This lease was not recorded and the plaintiff had no actual notice of it. G. L. (Ter. Ed.) c. 183, § 4, as appearing in St. 1941, c. 85. No

notice to terminate it had ever been given as required by the lease. A written declaration of trust, called the Atlas Realty Trust, was recorded on October 31, 1938, in the Suffolk registry of deeds. In it Harry N. Gorin was named as trustee with sole authority to execute deeds and leases. The beneficial interests in the trust were Harry N. Gorin fifteen twentieths, Celia Leeder three twentieths, and Frank Leeder two twentieths. Celia was the sister of Harry. On October 1, 1940, one Johnson, a straw for the Atlas Realty Trust, conveyed these premises to the trust. By a deed dated the same day Gorin as trustee as aforesaid executed a deed of these premises to Celia Leeder. Gorin kept this deed in his office until December 24, 1943, when it was recorded. Celia was not present when this deed was executed and had no knowledge of its existence at least up to the time it was recorded. Since 1938 Gorin and Frank Leeder had been partners in the real estate management business and this property was placed in the name of Celia solely for the convenience of Frank and Gorin in the conduct of their partnership business, and the property was treated, operated and managed as partnership property. Later in the day on which he acquired these premises the plaintiff conveyed them to his father and mother with whom he lived. The lessee Kallen continued to occupy her apartment under her lease after the conveyance to the plaintiff.

The principal contentions argued by the plaintiff are (1) that the acceptance of the deed of these premises did not in the circumstances here shown constitute a merger of the terms of the agreement with those of the deed; (2) that the defendants were guilty of actionable deceit because of the recital in the agreement that full possession of the premises subject to tenants at will was to be delivered at the time of the delivery of the deed, when in fact the premises were at the time of the execution of the agreement and at the time of the delivery of the deed subject to the lease herein referred to; and (3) that there was a breach of the covenants of the deed because of the existence of this lease.

The first contention of the plaintiff was thoroughly considered in *Pybus* v. *Grasso*, 317 Mass. 716, with ample citation of authorities, a case in which a clause similar to that in the present agreement was construed. It was there held that the terms of the agreement merged in the deed and that no recovery could be had based on a claim for breach of one of the terms of the agreement.

As to the second contention of the plaintiff we must consider whether the promise of the defendants contained in the agreement of sale referred to the status of the tenants in the premises as of the time of the making of the agreement or as of the time of the delivery of the deed. If he relies upon a promise that at the time the agreement was made all tenants were tenants at will, it was not a material one for obviously the plaintiff was only concerned with the status of the tenants when the deed was delivered. If it was a promise of what the status of the tenants would be at the time of the delivery of the deed, as we assume it to be, it is clearly a promise in futuro. It was not a representation of an existing fact and will not support an action for deceit. *Dawe* v. *Morris*, 149 Mass. 188, 191. *Pybus* v. *Grasso*, 317 Mass. 716, 720–721.

It may well be true that, if the promise here relied upon was a misrepresentation of the state of mind of the defendants at the time it was made, it could be the basis of an action for deceit. In *McComb* v. *C. R. Brewer Lumber Co.* 184 Mass. 276, at page 278, it was said, "As to this it is contended by the plaintiff that at the time the defendant promised . . . it did not intend to keep the promise, and that a representation of a present intention is a representation of an existing fact and therefore may be false and fraudulent. But, without implying that the plaintiff's contention would be true under any circumstances, the difficulty with his case is that the question is not raised upon the record. . . . An examination of the count will show that it does not contain any allegation that at the time the defendant said that the money should be used for working capital it had not the intention to perform that

promise. It first sets out the representations . . . then proceeds to state in what respects they were false and ·fraudulent and the defendant's knowledge of the falsity . . . . This is an allegation that the defendant failed to carry out its promise, and falls far short of an allegation that the defendant at the time it was made did not intend to carry it out. There is no allegation whatever as to the intent of the defendant at the time the promise was made." What was there said applies with particular force to the circumstances of the present case. See 64 Harv. L. Rev. 913, 923.

Before considering the third contention of the plaintiff, that there was a breach of the covenants of the deed, it is necessary to determine whether or not this lease is an encumbrance. The defendants argue that it is not as to the plaintiff because by its terms of automatic renewal it constituted a lease for more than seven years and therefore should have been recorded as provided in G. L. (Ter. Ed.) c. 183, § 4, as appearing in St. 1941, c. 85. Since it was not recorded they argue that it is invalid against the plaintiff who acquired the premises without actual notice of it. They rely upon *South Street Inn, Inc.* v. *Muehsam,* 323 Mass. 310, in which, however, there was involved a lease terminable only by the lessee. It was there said at page 312, "Since that term [of the lease] at the option of one party [the lessee] might extend for more than seven years from the making of the lease, the lease was one 'for more than seven years from the making thereof,' within the statute." And in *Toupin* v. *Peabody,* 162 Mass. 473, at pages 476–477, it was more specifically stated, "The intention of the particular clause in question is that a bona fide purchaser without actual notice may rely with certainty upon the fact that no instrument which does not appear of record, and of which he does not have actual notice, can give a tenant for years the right to any longer term than for seven years from the making of the instrument. . . . In respect of estates for years, the term during which the land which a purchaser had bought could be kept from his possession by the holder

of an unrecorded lease was the important matter to be fixed by the statute . . . ." Such a situation does not here exist. The lease in the present case could be terminated by either party so that after the plaintiff acquired title to the premises on October 31, 1947, by exercising his right to terminate and giving proper notice thereof, he could have terminated the lease on August 31, 1948. Thus it is not a lease for more than seven years which requires recording under the statute. We are of opinion, however, that it is a lease not terminable until August 31, 1948, and to that extent it was an encumbrance at the time of the conveyance.

General Laws (Ter. Ed.) c. 183, § 17, states the meaning of covenants in a quitclaim deed to be that the grantor covenants with the grantee that "the granted premises are free from all encumbrances *made* by the grantor, and that he will . . . warrant and defend the same to the grantee . . . forever against the lawful claims and demands of all persons claiming *by, through or under the grantor, but against none other*" (emphasis supplied). See G. L. (Ter. Ed.) c. 183, § 11. The question therefore resolves itself to a determination as to whether or not this lease was an encumbrance *made* by the defendants. No authority on this question has been given us by either the plaintiff or the defendants, and no case has been brought to our attention in which this precise question has been decided.

It should be noted that prior to the adoption of the so called short forms statute, the general form of quitclaim deeds in use contained the words "free from all incumbrances *made or suffered* by me" (emphasis supplied). Crocker's Notes on Common Forms (1938) § 337. It may be of significance that the words "or suffered" were omitted in G. L. (Ter. Ed.) c. 183, §§ 11 and 17.

The covenant in the short form quitclaim deed is undoubtedly a limited one. The nearest approach to a decision on this question is found in *Raymond* v. *Raymond*, 10 Cush. 134, at page 141, where it was said, "He took a deed with covenants of a very limited character, and having thus

taken certain express covenants of his vendor, he must be restricted to them . . . . A deed with a covenant of warranty against all persons claiming by, through, or under the grantor, cannot be thus extended to a general covenant of warranty against all persons." *West* v. *Spaulding*, 11 Met. 556, 558–559.

It is conceded that this lease was not made by the grantor, but the plaintiff argues that, because the grantor failed to exercise her option to terminate when she had an opportunity to do so, she in effect created a new lease from year to year and "made" an encumbrance within the meaning of the statute. We cannot agree with this contention for there is nothing in the record to show that the grantor had any knowledge of the existence of this lease at any time. In the *Raymond* case both the grantor and the grantee knew of the existence of the encumbrance, yet it was there held that as such it did not come within the provisions of limited covenants.

The plaintiff further contends that in effect the grantor held as a "straw" for her husband Frank and Gorin, so that at least Frank Leeder should be liable because the lease was made by his partner Gorin. A short answer to this is that the defendant Frank Leeder in both the agreement and the deed made no promises or representations of any kind. In the agreement he agreed to release his curtesy interest in the premises and in the deed he did so. Other than that he covenanted nothing.

*Exceptions overruled.*