BENNETT SILVERBLATT, trustee, *vs.* GEORGIA LIVADAS.

Middlesex. December 10, 1959, March 1, 1960. — March 7, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Deed,* Quitclaim deed, Covenant against encumbrances. *Lien. Building.* *Words,* "Made."

The omission, in the covenant against encumbrances in the short statutory form of quitclaim deed, of the words "or suffered" usually appearing in quitclaim deeds previous to the short form was significant, and a quitclaim deed in the short form must be considered on the basis that the words "or suffered" are not implied in that covenant; overruling in part *Engel* v. *Thompson,* 336 Mass. 529. [478]

Liability of an owner, lessee, or mortgagee in possession of premises to a forfeiture to the municipality under G. L. c. 143, § 9, as amended through St. 1949, c. 541, § 3, for failure to comply with a building safety order made by the inspector of buildings under § 6, as amended through St. 1949, c. 541, § 1, is not an encumbrance on the premises within the covenant against encumbrances in a quitclaim deed in the short statutory form. [479]

Where the building inspector of a municipality notified the owner of premises under G. L. c. 143, § 6, as amended through St. 1949, c. 541, § 1, to replace an unsafe fire escape, but no further action was taken under c. 143, and no work on the fire escape done, before the owner conveyed the premises by a quitclaim deed in the short statutory form to one who had no knowledge of the inspector's notice, the potential lien for the cost of the replacement under § 9, as amended through St. 1949, c. 541, § 3, if it was an encumbrance within the covenants in the deed, was not an encumbrance "made" by the grantor, nor was there at the time of the conveyance a claim or demand by one "claiming by, through, or under" the grantor. [480]

CONTRACT OR TORT. Writ in the District Court of Lowell dated September 26, 1956.

Upon removal to the Superior Court the action was tried before *Forte, J.*

*Woodbury F. Howard,* for the plaintiff.

*John J. Ryan, Jr.,* for the defendant.

CUTTER, J. This action, brought in a District Court, was removed to the Superior Court. The question for deci-

sion is whether the trial judge properly directed a verdict for the defendant upon a count alleging breach of the statutory covenants in a quitclaim deed. The facts are stated in their aspect most favorable to the plaintiff.

The defendant (Mrs. Livadas) owned a building in Lowell with an outside fire escape, built mainly of wood. In August, 1956, this "was usable, but . . . in a dangerous condition." On May 23, 1956, the building inspector sent to Mrs. Livadas a letter ordering her "in accordance with" G. L. c. 143, as amended, "to remove this . . . fire escape and install [a] new metal fire escape," work to be commenced on or before May 31, 1956. A permit to repair the fire escape was later denied by the building department.

The plaintiff, in July, 1955, after "a cursory examination" of the premises, granted a loan to Livadas, taking a note of Livadas and Mrs. Livadas for $1,350, secured by a second mortgage on the property. In August, 1956, another loan was made by the plaintiff. Thereafter negotiations took place between "Livadas and [the plaintiff] . . . with reference to the possible purchase of the property by" the plaintiff. Although the plaintiff made a partial inspection of the property, he "never at any time . . . had knowledge that there was a fire escape in the rear" of the building. A deed in statutory form with quitclaim covenants, dated August 28, 1956, in which Livadas joined, was given by Mrs. Livadas to the plaintiff as trustee of a real estate trust.

The contents of the May 23, 1956, letter were never brought to the plaintiff's attention by Livadas or his wife. The plaintiff prior to the sale had no knowledge that it had been sent. Shortly after the conveyance he learned about it and gave written notice to Mrs. Livadas that he claimed damages for breach of warranty.

1. In *Engel* v. *Thompson*, 336 Mass. 529, 531–532, we held that the absence from the statutory quitclaim covenants (G. L. c. 183, § 17, quoted *infra*) of the words "or suffered" was "without significance" and that the statutory covenant would be construed as if the covenant contained those words. See Swaim, Crocker's Notes on Common Forms

(7th ed.) §§ 14, 15, 18, 139–142; 1958 Annual Survey of Mass. Law, § 1.7. Cf. *Fanger* v. *Leeder*, 327 Mass. 501, 507. The *Engel* case is relevant to one aspect of this case. Because significant material, not referred to in the *Engel* decision, has come to our attention, we reëxamine its holding.

The short forms of deeds now generally in use (see G. L. c. 183, §§ 8–12, 16, 17, and appendix) were authorized by St. 1912, c. 502. Section 1 (see G. L. c. 183, § 8) stated that the "following forms may be used . . . and . . . may be altered as circumstances may require, but nothing in this act shall . . . prevent the use of other forms." Section 3 contained a statutory form of quitclaim deed using the now familiar term "quitclaim covenants." See G. L. c. 183, §§ 11, 17, and app. form (2). Section 14 (see G. L. c. 183, § 12) provided that "no covenant shall be implied from . . . the word 'grant.'" Section 17 [1] of the 1912 statute (see G. L. c. 183, § 17) provided that "quitclaim covenants" or "limited covenants" should have the "full force, meaning and effect of" stated words, which in the General Laws have been changed in minor respects, so that they now read: "The grantor, for himself, his heirs, executors, administrators and successors, covenants with the grantee, his heirs, successors and assigns, that the granted premises are free from all encumbrances *made by the grantor*, and that he will, and his heirs, executors, administrators and successors shall, warrant and defend the same to the grantee and his heirs, successors and assigns forever against the lawful claims and demands of *all persons claiming by, through or under the grantor, but against none other*" (emphasis supplied). The legislative history of the 1912 statute sheds little light on its meaning. See 1912 House Docs. 950, 955 (on the petition of Mr. Frank W. Grinnell and others), 2031. The 1912 statute defines the terms "warranty covenants" and "quitclaim covenants" with great precision. In view of the provision of § 1 permit-

---

[1] Section 17 may be contrasted with § 16 (now see G. L. c. 183, §§ 10, 16) which defines "warranty covenants" in part as a warranty that the grantor is "lawfully seized in fee simple of the granted premises; that they are free from *all encumbrances*," and that they will be warranted and defended "against the lawful claims and demands of *all persons*" (emphasis supplied).

ting alteration of the short forms, the 1912 statute affords strong reason against implying any words, in addition to those in the respective definitions, which are not specifically inserted in a particular instrument. The term "warranty covenants" is expressed broadly (see italicized words quoted, footnote 1, *supra*). On the other hand, the term "quitclaim covenants" in § 17 (see G. L. c. 183, § 11), which is equated with the term "limited covenants," is narrowly confined.

We have been referred to no contemporaneous 1912 commentaries on the short form statute. There has been, however, later discussion. In Davis, Massachusetts Conveyancers' Handbook, § 85, pp. 125–126, after quoting a long form of covenants common in quitclaim deeds prior to 1912 (see also Crocker, Notes on Mass. Common Forms [5th ed. 1913] pp. 153–154) it is said that "it is to be noted that the old quitclaim covenants differ from the quitclaim covenants in the Short Forms Act, in that in the long form deed the grantor covenants against encumbrances made or suffered by him, whereas in the short form deed the grantor covenants only against encumbrances made by him. The result is that the short form does not covenant against involuntary encumbrances such as taxes." See Swaim, Crocker's Notes on Common Forms (7th ed. 1955) § 15 (see also § 18); Partridge, Deeds, Mortgages and Easements, § 39, p. 139. See also editorial note, 36 Mass. L. Q. (No. 3) 48–49,[2] discussing the intimation in *Fanger* v. *Leeder*, 327 Mass. 501, 507, that it "may be of significance that the words 'or

[2] In this note, the editor, Mr. Frank W. Grinnell, says (at p. 50), "Having served on the committee of conveyancers which drafted the [1912] short form act . . . and supported it to enactment, we can assure the court that the omission of the words 'or suffered' is not only 'of significance,' but was deliberate and fully understood at the time, during the discussions with bar committees and the legislative committee. . . . '[I]n urban communities' and especially in Boston, 'grantors prefer not to incur the liability of warranting the title,' against unknown claims. That was as true before 1912 as it is today and . . . it was the common practice of experienced practitioners to cross out the words 'or suffered' which appeared in the [then] common printed form . . . . Accordingly, in drafting the statutory . . . covenant, which . . . is incorporated by reference . . . by the words 'Quitclaim covenants,' we omitted the words 'or suffered' to protect grantors from the trap of uncertainty involved in those words. The opinion of the court is exactly in accordance with the statute."

suffered' were omitted in G. L. (Ter. Ed.) c. 183, §§ 11 and 17."

The considerations mentioned above lead us to overrule so much of the *Engel* case (336 Mass. 529, 531–532) as holds that the omission from the short form quitclaim covenants of the words "or suffered" was "without significance." We consider the quitclaim covenants in the deed of August 28, 1956, on the basis that the words "or suffered" are not implied in those covenants.

2. The statutory provisions under which the building inspector proceeded are found in G. L. c. 143, §§ 6, 8, and 9 (as amended,[3] respectively, by St. 1949, c. 541, §§ 1, 2, and 3). Section 6 reads: "In a city . . . wherein there is in force a building code . . . such . . . person as the mayor . . . may designate shall be inspector of buildings, and . . . upon being informed . . . that a building . . . or anything . . . connected therewith . . . is dangerous . . . shall inspect the same; and if it appears . . . dangerous he shall . . . notify the owner . . . to remove it or make it safe. . . ." Chapter 143, § 8, provides that if the owner neglects to comply "a careful survey of the premises shall be made by a board" of two officials and a disinterested person, and that a "written report . . . shall be made, and a copy . . . served on such owner." By § 9, if the report declares the "structure to be dangerous, and if the owner . . . continues such . . . neglect" the building inspector "shall cause it to be made safe or taken down." Section 9 further provides that the "costs . . . incurred shall constitute a lien upon the land . . . and shall be enforced . . . in the manner provided for the collection of taxes on land; and such owner . . . shall, for every day's continuance of such . . . neglect after being so notified, forfeit to the city . . . not less than ten nor more than fifty dollars." The language of the forfeiture provision of § 9, when read with § 10, indicates that, if the original order of the building inspector is upheld, the daily forfeiture

---

[3] These sections have been further changed by St. 1957, c. 214, §§ 1, 3, and 4, not applicable to the present case. See also St. 1959, c. 75, which makes it clear that the forfeiture provided by § 9 is really a fine.

then recoverable is to relate back to the date of the original notice.[4]

Apart from the letter of May 23, 1956, the record does not show other action by the building inspector under c. 143, or that any board was appointed, any survey or written report made, or any copy of a report served upon Mrs. Livadas prior to her conveyance. No work to demolish the fire escape had been done by the city prior to the conveyance, so no lien could have arisen. It must be decided (1) whether the potential but imperfect lien and the potential but unliquidated forfeiture liability constitute encumbrances "made by the grantor" within the statutory quitclaim covenant and (2) whether they give rise to a claim against the land by a person "claiming by, through, or under" Mrs. Livadas within the statutory warranty. See G. L. c. 183, § 17.

(a) Although the costs of any necessary repair or demolition by the city are to constitute a lien on the land, there is no similar provision with respect to the forfeiture provided in G. L. c. 143, § 9, which appears to be a penal imposition upon the "owner, lessee, or mortgagee in possession" not in any way affecting the title to the land. The penal nature of the forfeiture is even more apparent under the 1959 amendment, not here applicable (see footnote 3, *supra*). The forfeiture, or the liability to it, cannot be regarded either as an encumbrance within the statutory quitclaim covenant or as giving rise to a breach of the statutory warranty.

(b) The contingent or inchoate lien, which might at some later time come into existence under § 9, as a consequence of the building inspector's letter of May 23, 1956, if it was an encumbrance (as to which we make no intimation), was not an encumbrance "made" by Mrs. Livadas, as opposed

[4] Section 10, as amended by St. 1949, c. 541, § 4, provides that an owner aggrieved by an order of a building inspector may appeal to the Superior Court for a trial by jury under G. L. c. 139, § 2 (as amended through St. 1945, c. 697, § 5), subject to two provisos, the second of which reads, "and provided . . . that this section shall not prevent the city . . . from recovering the forfeiture provided in . . . section nine from the date of the service of the original notice, unless the order is annulled by the jury."

to one "suffered" by her. The cases afford little assistance in determining the meaning of the word "made" in quitclaim covenants. See *Tarbell* v. *Page*, 155 Mass. 256, 258; *Weeks* v. *Grace*, 194 Mass. 296, 297; *Fanger* v. *Leeder*, 327 Mass. 501, 508. See also *West* v. *Spaulding*, 11 Met. 556, 558–559; *Raymond* v. *Raymond*, 10 Cush. 134, 141; *Foster* v. *Woodward*, 141 Mass. 160, 161. In the light of the omission of the words "or suffered" from the statutory form, already discussed, we interpret "made" as implying something more than mere inaction by the grantor of the type here shown.

In decisions under general covenants and warranties, the question whether an encumbrance was "made" by a grantor does not arise. See *Hill* v. *Bacon*, 110 Mass. 387, 388; *Blackie* v. *Hudson*, 117 Mass. 181, 183. See also *Brunke* v. *Pharo*, 3 Wis. 2d 628, 630–632 (existing violation of building laws, as to which enforcement action is imminent, held an encumbrance within a general covenant). Cf. *Stone* v. *Sexsmith*, 28 Wash. 2d 947, 950–952. *Carr* v. *Dooley*, 119 Mass. 294, 296, is distinguishable because the quitclaim deed there discussed contained a warranty against encumbrances "made or suffered."

(c) The inchoate lien was not within the statutory warranty [5] as a demand by one claiming "by, through, or under" Mrs. Livadas. When she sold the land she had received only a preliminary notice, not followed by any statutory procedure under § 8. The notice imposed finally no obligation on Mrs. Livadas to act, at least until there had been board action under § 8. If after her conveyance such an obligation had been imposed, it would necessarily have been imposed upon the then owner, lessee, or mortgagee in possession. The city would not then be claiming by, through, or under Mrs. Livadas in acting itself and in creating a lien under § 9 for the cost of such action. Cf. *Hill* v. *Bacon*, 110 Mass. 387, 388, in which, although it dealt with a general

---

[5] We do not consider whether the plaintiff had sufficiently established in other respects the basis of an action upon the warranty. See *Gallison* v. *Downing*, 244 Mass. 33, 37–38; Swaim, Crocker's Notes on Common Forms (7th ed.) § 144.

warranty against the claims of all persons, the court spoke of a lien for real estate taxes as arising "through" a grantor holding title on the assessment date. That grantor, on the assessment date, became subject to an immediate tax liability whereas Mrs. Livadas became subject to no immediate obligation because of the notice of May 23, 1956. We do not determine whether the statement in the *Hill* case has been affected by *Weeks* v. *Grace*, 194 Mass. 296, 300–302. See *Horn* v. *Crest Hill Homes, Inc., ante,* 362, 365.

The plaintiff did not show facts constituting a breach of any of Mrs. Livadas's statutory covenants. The verdict for Mrs. Livadas was properly directed.

*Exceptions overruled.*