*Northern District*

No. 8163

**GORDON B. ALLEY**

**v.**

**CLARA S. OAKES**

Argued: Mar. 21, 1974 - Decided: Aug. 16, 1974

*Present:* Flaschner, P.J., Flynn, and Bacigalupo, JJ.

Case tried to *Jodrey, J.* in the First District Court of Essex, No. 1903 of 1971.

**Flynn, J.** This is an action of tort and contract in two counts. In Count 1 the plaintiff alleges deceit in tort in that the defendant sold him a lot of land in Wenham for $7,500.00, that the defendant represented to the plaintiff

there was appurtenant to said land a right of way, 20 feet wide, extending from the lot to Porter Street; that in fact the lot did not enjoy such a right of way; that the plaintiff was therefore unable to erect thereon a single dwelling; and that the plaintiff thereby sustained damages. In Count 2 the plaintiff alleges in contract that the defendant breached the statutory (G.L. c. 183, § 17) quitclaim covenant in her deed to the plaintiff that the lot of land in Wenham was free from all encumbrances made by her when in fact the defendant had caused or permitted the lot to be without benefit of the 20 foot right of way at the time of conveyance.

The court found for the defendant on each of Counts 1 and 2.

**At the trial there was evidence tending to show:**

On or about April 22, 1946, parties known as Foster and Anderson owned land on Porter Street in Wenham. At that time they prepared a plan of their land showing four lots and a **right of way** 20 feet wide. They signed an agreement which established a **right of way for lots 2 and 4** on the plan. The plan and agreement were recorded at the Registry of Deeds. The lots are arranged on the plan as per map attached. On April 7, 1950, Mrs. Andersen conveyed Lots 1 and 2 to Mrs. Foster, "subject to all rights of way of record."

On January 2, 1953, Mrs. Foster conveyed Lot 2 to one Law. This deed recited that Lot 2 was subject to the right of way agreement. It reserved nothing for the benefit of Lot 1. Law on April 4, 1957, conveyed Lot 2 to Carr, its present owner.

Almost six years after Mrs. Foster conveyed Lot 2 to Law without reserving any interest in the right of way for the benefit of Lot 1, she and Mrs. Andersen on October 10, 1958, conveyed Lot 4 to the defendant and her husband Fred C. Hersom.

On March 10, 1959, the defendant and her late husband acquired Lots 1 and 3 from Mrs. Foster and Mrs. Andersen.

As of March 10, 1959, the defendant and her late husband Hersom owned Lots 1, 3, and 4.

Following the death of Mr. Hersom these lots were conveyed on January 9, 1961 to the defendant and her late husband Charles E. Dodge.

On February 10, 1968, the defendant's husband having died and she having remarried, she, as Clara S. Oakes, executed the agreement with the plaintiff for the sale of Lot 1.

The agreement was drafted by the plaintiff. It provided for the sale of Lot 1 to the plaintiff. It states ''See plan of land Wenham, Mass., Book 3453, Page 286'' and also ''See easement''. It also states ''Building Permit to be issued on said lot for a single family home''.

Prior to February 10, 1968, the plaintiff, a real estate broker of many years' experience, talked to the defendant about her property which at that time consisted of Lots 1, 3, and 4. The defendant's residence was located upon Lot 4. The plaintiff was the listing broker who, with the consent of the defendant, was trying to find a purchaser for the defendant's property. In the conversation the plaintiff inquired concerning the right of Lot 1, as well as of Lot 3, to use the 20 foot wide driveway between Lots 2 and 4. The defendant stated that the driveway was for the use of Lots 1 and 3 as well as Lot 4 and that she had the right to give the right of way. The plaintiff suggested to the defendant that she would do better by selling Lots 1, 3, and 4 separately. The defendant agreed. The defendant proposed having her attorney draft the agreement and the plaintiff countered by saying he would draw it, which he did.

The plaintiff had his own attorney examine the title to Lot 1. The plaintiff borrowed the $7,500.00 purchase price from Danvers Savings Bank, which loan was secured by other real estate of the plaintiff.

On May 31, 1968, the defendant sold and conveyed her residence (Lot 4) to one Barton.

On June 5, 1968, she sold and conveyed Lot 1 to the plaintiff. The premises vere conveyed "together with and subject to the right to pass and repass over a twenty-foot Right of Way

as shown on said plan (i.e. the recorded plan previously referred to) in common with others entitled thereto". Lot 3 was also sold at another time to another person.

In the summer of 1969, when he was preparing to build on Lot 1, the plaintiff was restrained from using the 20 foot driveway by a court order obtained by Carr (Lot 2) and Barton (Lot 4). The plaintiff talked to the defendant and asked her to take Lot 1 back and give him back his money. The defendant refused. A final decree of the Probate Court denying the use of the driveway by Lots 1 and 3 was entered on September 7, 1972.

The plaintiff was unable to build a house on Lot 1 because of the lack of access to Porter Street via the 20 foot driveway. He sold Lot 1 on October 27, 1971, to Carr for $5,000.00. His damages were:

| | |
|---|---|
| Loss in sale ............. | $2,500.00 |
| Taxes 1968-1971 .......... | 166.00 |
| Interest on $7,500 borrowed 6/5/68-10/27/71 ........ | 1,575.00 |
| Total: | $4,241.00 |

There were 25 exhibits, including photographs, the recorded plan, the purchase and sales Agreement between the parties, the various deeds referred to above and the Probate Court decree was introduced in evidence.

At the close of the evidence and before final arguments the plaintiff made the following requests for rulings.

1. The evidence warrants a finding for the plaintiff on Count 1.

2. To recover in an action of deceit the plaintiff must prove as to the misrepresentation that it was as to a matter of fact, which may include a belief or an intention made by the defendant; that it was made with the intention to induce another to act upon it; that it was made with knowledge with recklessness as to its truth or falsehood, or was the utterance of a half truth which in effect was a lie, or was the failure to disclose known facts when there was a duty, original or supervening, to disclose; that it was intended that it should be acted upon, as it was, and that damage directly resulted therefrom.

3. If a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and if false, it may be the basis for an action of deceit without proof of an actual intent to deceive.

4. A false, though innocent, representation of a fact pertaining to the property being sold even though the defendant acted in good faith and had no intention of misleading or deceiving the plaintiff, if the plaintiff relies upon it and is induced thereby to purchase, and the false, though innocent representation was

made as of the defendant's own knowledge, and was stated as a fact, is actionable in tort for deceit.

5. The evidence warrants a finding for the plaintiff on Count 2.

6. Restriction of the use of land which effectively prevents its use for a building is an encumbrance. Its existence at the time of the execution of the defendant's deed to the plaintiff was a breach of the quitclaim statutory covenant in the defendant's deed to the plaintiff. Right of action for its breach then accrued to the plaintiff.

The court allowed requests numbered 1, 2, 3, and 4, and denied requests numbered 5 and 6. The plaintiff filed a motion to amend the court's findings alleging inconsistency and conflict between the court's action on the requests and the findings.

*The trial justice's "Memorandum of Decision" reads as follows:*

"The plaintiff, a real estate broker of many years' experience in this County, solicited the defendant, a widow woman, to sell her residence in Wenham. He learned that she owned two lots behind her residence and asked to sell them also. The defendant gave him a plan she had of these lots which showed a right of way leading over the two front lots shown thereon and terminating at the two rear lots. Plaintiff advised defendant to sell the lots separately and she agreed to do so. Plaintiff agreed to

purchase one of the rear lots himself for $7,500.00 and told the defendant he intended to build a dwelling on that lot. There was a discussion of the right of way. Defendant understood that she had a right to use the right of way to reach the rear lots and told defendant he would have the use of said way for access to the lot he was buying.

The defendant wanted her attorney to draw a real estate agreement but the plaintiff said this was not necessary; he would do it, which he did. He put in the agreement clauses containing several contingencies: "See easement". "Pending Town of Wenham — Board of Appeals and Planning Board Approval of Lot 1, being a Building Lot and Building Permit to be issued on said lot for a single family house." The agreement also had a clause saying "The acceptance of a deed by the Buyer shall be deemed to be a full performance and discharge hereof." Before the agreement was signed, the plaintiff had his attorney do a title examination on the property and another attorney did another title examination for a mortgage bank and the plaintiff before the passing. Plaintiff also made inquiries at the Town Hall concerning a building permit and understood he could readily obtain one. Also, before the passing, the plaintiff was asked by the defendant's attorney if he had satisfied himself as to all contingencies in the agreement and the plaintiff said that he had. Thereafter, the de-

fendant conveyed "together with and subject to the right to pass and repass over a 20 foot right of way as shown on said plan in common with others entitled thereof." This deed was dated June 5, 1968. This was the same language in the deed to the defendant from her predecessor in title.

No right of way in fact existed to serve the lot which the plaintiff was buying, although the same was delivered on said plan. Both parties were ignorant of this fact and believed otherwise until the sale was completed.

Sometime after the sale was completed, plaintiff learned and told defendant that he could not use the lot as intended and requested his money back. Defendant refused to rescind.

I find that any untrue statement made by the defendant to the plaintiff was made with the belief that it was true. There was an entire absence of fraud, concealment, or trickery. There was no non-disclosure of facts known to the defendant. There was no intention to mislead. There was no attempt to have plaintiff refrain from his own investigation of the situation.

I find the plaintiff did not rely upon any representation of the defendant, that he took care to protect himself, that he made or caused to be made an independent investigation before he completed the purchase and relied thereon when he went through with the transaction.

I find for the defendant on Count 1.

Count 2 seems to raise the question whether the failure of the defendant to create a right of way for her rear land when she conveyed a front lot was an "encumbrance made by" her amounting to breach of the quitclaim covenants contained in her deed to the plaintiff. I do not so interpret the law and consequently I find for the defendant on Count 2."

The plaintiff claimed to be aggrieved by the court's decision in the light of the rulings made, by the court's denial of requests 5 and 6, and by denial of his motion to amend the findings, which motion is based upon an alleged inconsistency between the allowance of the first four requests for rulings of law and the court's ultimate finding for the defendant on Count 1.

There are three issues here involved. The *first issue* is whether or not there exists a conflict or inconsistency between the trial justice's allowances of the first four requests for rulings of law submitted by the plaintiff and his ultimate finding for the defendant on Count 1. We perceive no conflict or inconsistency between the two. The plaintiff in these requests correctly stated certain propositions of law on the subject of deceit and the elements that must be proved in order to successfully maintain an action therein. Indeed, the trial justice may well have been in error if he had not allowed these requests. However, prior to

finding for the defendant on this count he found as a fact that one of the essential elements of deceit, that is reliance by the plaintiff upon the defendant's statements, was lacking and consequently found for the defendant. *Butler* v. *Martin,* 247 Mass. 169, 173. *Kilroy* v. *Barron,* 326 Mass. 464, 465.

■■ This brings us to the *second issue* which is whether or not, upon the evidence reported, the justice was warranted in finding for the defendant upon Count 1. We believe that upon the evidence reported his finding was so warranted. The plaintiff, a real estate broker with many years' experience, had an independent title examination conducted by his own attorney before consummating the transaction with the defendant and the justice found as a fact that the plaintiff took care to protect himself and relied solely on the results of this investigation which he himself had caused to be undertaken rather than upon any representation made to him by the defendant.

This Decision cannot reverse findings of fact made by a trial judge if the same are warranted by the evidence reported. *Engel* v. *Checker Taxi Co.,* 275 Mass. 471, 475. *Moss* v. *Old Colony Trust Co.,* 246 Mass. 139, 143. *Merrill* v. *Kirkland Construction,* 310 N.E.2d 106.

The plaintiff has argued that the rule enunciated in *Yorke* v. *Taylor,* 332 Mass. 368 has application here. In *Yorke* an innocent misre-

presentation as to the assessed value of certain real estate was made by the defendant to the plaintiff. The court held that although the misrepresentation was an innocent one it was made as of the defendant's own knowledge and found for the plaintiff even though the assessed value was a matter of public information within reach of both parties. The court applied the rule of the Restatement of Torts. § 540, that "the recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying on its truth although he might have ascertained the falsity of the representation had he made an investigation."

We are not of the opinion that the rule adopted in *Yorke* applies to the case at bar because of the trial justice's specific findings that the plaintiff did not rely upon the defendant's misrepresentations and that he did rely solely upon the results of an independent investigation instituted by himself.

The *third and last issue* to be decided is whether or not a finding for the plaintiff was warranted on Count 2. If a finding for the plaintiff was not warranted, as the Judge so ruled, a finding for the defendant was required. *Hoffman* v. *Chelsea,* 315 Mass. 54. *Rummel* v. *Peters,* 314 Mass. 504, 517.

The plaintiff's claim is that by the conveyance of Lot 1 to the plaintiff without benefit of the 20 foot right of way, referred to in the deed running from the defendant to the

plaintiff, the defendant breached the quitclaim covenants contained in the deed.

G.L. c. 183, §§ 11 and 17 which pertain to quitclaim deeds and quitclaim covenants clearly indicate that a grantor is not liable for breach of a quitclaim covenant where the alleged breach relates to an encumbrance that exists, but was not made by the grantor or his successors in title. See also *Silverblatt* v. *Livadas,* 340 Mass. 474, 477-480.

The plaintiff argues an encumbrance was "made" by the defendant in that before conveying lots 1, 3, and 4 she had within her ability to provide Lot 1 with access to Porter Street even if she had to add an additional 10 feet of driveway width easterly over Lot 4 to give Lot 1 a 20 foot wide driveway access exclusively over Lot 4 to Porter Street and that the defendant's deed to Barton of Lot 4 on May 31, 1968, a few days before her deed of Lot 1 to the plaintiff on June 6, 1968, made this impossible and in effect made the encumbrance.

We are not persuaded by this argument. The failure to reserve a right of way for the benefit of Lot 1 over Lots 2 and 4 was something that occurred in 1953 when Mrs. Foster conveyed Lot 2 to one Law predecessor in title to that lot of Carr, the present owner. Mrs. Foster at the time of that conveyance owned Lots 1 and 2 and together with Mrs. Andersen owned Lots 3 and 4. That was some six years before

the defendant acquired an interest in any of the lots. Thus, if an encumbrance were imposed on the title of Lot 1 because of a lack of a right of way to reach Porter Street such encumbrance was not made by the defendant, but by a predecessor in title.

Plaintiff's argument that the defendant's deed of Lot 4 to Barton without protecting Lot 1 constituted the making of an encumbrance upon Lot 1 is not convincing because the *making* of an encumbrance presupposes an affirmative act and not mere passive inactivity on the plaintiff's part.

In referring to encumbrances "made" within the purview of Chapter 183, §§ 11 and 17, in *Silverblatt* v. *Livadas*, 340 Mass. 474, 480, where it was held that the failure to comply with a building safety order was not an encumbrance made by the grantor of a quitclaim deed, Mr. Justice Cutter wrote that "In the light of the omission of the words 'or suffered' from the statutory form, we interpret 'made' as implying something more than mere inaction by the grantor of the type here shown."

Again, in *Fanger* v. *Leeder*, 327 Mass. 501, 507 and 508, where a grantor delivered a quitclaim deed which mentioned no encumbrances but where in reality the premises were subject to an unrecorded lease of which neither the grantor nor grantee had notice it was held in face of the argument that the grantor had

"made" an encumbrance when she failed to exercise an option to terminate and thus created a new lease from year to year, that such inaction on the part of the grantor was not the "making" of an encumbrance affecting the property deeded. *Gallisen* v. *Downing*, 244 Mass. 33, cited by the plaintiff is inapposite, as a warranty deed and not a quitclaim deed was involved therein.

We conclude, therefore, that the trial justice was correct in his disposition of the plaintiff's six requests for rulings as well as in the action he took upon the plaintiff's motion to amend his finding. There being no error the report is dismissed. So ordered.

JOHN A. McNIFF of Peabody
 for Plaintiff
HILL & BLAKE of Salem
 for Defendant